IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF FLORIDA (PENSACOLA)

| | |
|---|---|
| STATE OF FLORIDA etc., et al, | ) |
| Plaintiffs, | ) Case No. 3:10-cv-0091-RV-EMT |
| vs. | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HEALTH AND HUMAN RESOURCES et al., | ) |
| `Defendants. | ) |

**PRO SE RULE 24 MOTION BY ROBERT P. SMITH, JR.
TO INTERVENE AS PARTY DEFENDANT
(including supporting Memorandum, NDFla.R7.1(a)**

ROBERT P. SMITH, JR., pro se, respectfully moves the Court to grant him intervention as a party defendant as of right pursuant to Rule 24(a), FRCP, or alternatively as a matter of discretion under Rule 24(b), and shows unto the Court:

1.     The existing parties have not consented to Movant's intervention. As appears in the Memorandum below, though Movant seeks comprehensive party status, the basis for his Rule 24(a) Motion most clearly satisfying all four criteria for intervention,, e.g., *Sierra Club v. Leavitt*, 488 F3d 909 (11th Cir 2007), is Movant's purpose to contest the filing of this action in the Pensacola Division rather than in the Tallahassee Division, where McCollum's office, his official duties, and the state's asserted interests are principally located. Movant as intervenor would advocate for transferring the case for docketing, re-assignment and further action, to Tallahassee.

2. Movant as intervenor would also advocate (1) that the action as framed is not a Case or Controversy within Article III, Section 2 of the Constitution; and (2) that the Attorneys General and their respective States lack standing to sue as they seek to do, having asserted no sovereign state action (such as an Interposition Resolution by state legislation or constitution), no proprietary interest implicating in properties or finance (except in the very financial interests that this Act of Congress seeks to redress and protect via the Commerce Clause power); but only an asserted *parens patriae* interest in a supposed class of citizens who profess temporarily (only in order to ground this litigation, and subject to change of mind as their health and financial fortunes change in time) a political attitude of libertarian independence of and from the existing national health care system that engulfs them nevertheless. The asserted class of citizens is so amorphous, so vaporous, unstable and speculative, as to be entirely incapable ot supporting this action. The Complaint so framed actually purports on its face to represent *parens patriae* that nonjusticiable class against the very sovereign, the United States, whose Act stands in the true and superior *parens patriae* relation to all United States citizens, including Movant. See, e.g. ***Chiles v. Thornburgh***, 865 F.3d 1197, 1208-09 (11th Cir. 1989). The complaint should be dismissed.

3. Finally, if other impediments to this Court's exercizing jurisdiction should be overcome, Movant as intervenor would join the other defendants in showing substantially, in law and in fact, that the Act of Congress complained of was enacted to redress and regulate the detrimental conditions and prospects that now engulf all of our citizens, virtually all human health in this Nation. The Act deeply implicates Interstate Commerce. Nor does it offend the Taxing Power or any other constitutional restraint.

4.      ***Movant's substantial interest in the matter***.   (a) Movant at age 77 is subject to the health complexities typical of his age – perhaps a model beneficiary, in that way, of the health care reform that the Act seeks to advance.  He is, he firmly believes, fully capable of adding to the Court's proper understanding of the issues.  His substantial personal interest in defending the Health Care Act is, in law, exactly reciprocal, though it is more substantial and stable, to the asserted interests of those for whom the action ostensibly is filed   Movant's interest is in sustaining the Act and participating in its defense, in Tallahassee.  The Attorney General's inexplicable (except as forum-shopping for a favorable political climate) choice to tile in Pensacola rather than Tallahassee impacts Movant's interests significantly.  For example, movant's Tallahassee residence is 15 minutes' drive from the Tallahassee federal courthouse, but four hours's drive from the Pensacola courthouse.  Movant will be unable to attend the recently scheduled scheduling conference before the Court on Wednesday, April 14, due to previously scheduled cataract eye surgery on Tuesday, April 13, which will prevent his driving to Pensacola; and which the surgeon has declined to re-schedule at the inconvenience of patients scheduled later in the near term..

(b)     Though he proceeds here *pro se* as a citizen, Movant is capable of participating effectively in the defense, on both the law and the facts.  He is a retired lawyer of more than 50 years litigation experience in the federal and state courts of Florida.  Five years ago he ended 21 years of litigation practice in Tallahassee, 18 years with a substantial law firm and then briefly as a sole practitioner.  From 1975 through 1983 he was a judge or chief judge of the Florida District Court of Appeal, First District, headquartered in Tallahassee.  From 1957 to 1975 he was an associate then a member of

a Jacksonville litigation firm. Throughout, he was a member of the bar of this Court, of the District Courts for the Middle and Southern Districts of Florida, the Court of Appeals for the Eleventh Circuit, and the Supreme Court of the United States.  He is already familiar with most of the issues in this case, and with his experience believes that his participation would facilitate the timely and just disposition of this case, not delay it. Since March 23, when the case was filed, Movant has had  substantial contacts with the parties' attorneys in the case, as more detailed below.

5. **Movant's timely efforts thus far to participate and influence the litigation, culminating in this timely Motion.** (a)  Movant first obtained on about March 23, 2010, by public records request of Attorney General McCollum, at Tallahassee, a copy of his internal office memorandum dated January 19, 2010, entitled "Constitutional Analysis of the Individual Mandate in the Federal Health Care Legislation," which tellingly describes the purported class of citizens for whom suit would  be brought as those who choose to be "*inactive* in the marketplace" (emph. in the text) – that is, they claim not to want, here and now, a doctor's or a hospital's care – but whom the Act subjects to "a compulsion to purchase *apparently* unwanted insurance or be penalized." (e..a.)..  "Apparently" now, but "apparently" not later, when needed.

(b) Movant on March 24, 2010, delivered to the Attorney General's Capitol Office (in Tallahassee, of course), two letters: (i) protesting the proposed litigation on grounds including the nonjusticiability of a purported class who for the moment abjure publicly-assisted health care, but reserve the right to access public emergency rooms as needed in the future; (ii) requesting a Section 120.57(1), Fla. Stat., administrative hearing on the factual and policy issues of whether any litigation should be maintained in

Tallahassee rather than Pensacola, where it had been filed the day previously. In due course Movant received a three-page letter from the Senior Assistant Attorney General, courteously disagreeing and declining the administrative remedy.

  (c) Movant, having furnished to the Governor's office and the Chief Financial Officer's Office in the Capitol, a copy of his principal letter, [item 5(b)(i) above] of March 24 to the Attorney General, followed up repeatedly with the CFO and her General Counsel, and thereafter received advice and assistance from that office in collecting financial impact information in Florida from appropriate health care agencies, headquartered in Tallahassee, which might be evidenced to the Court as contextual matter for any constitutional issue..

  (d) Movant on March 26 contacted the United States Attorney's office in Tallahassee asking to speak with the Assistant U. S. Attorney responsible for the litigation, or other responsible person, and was advised on the following Monday, March 29, that by instructions from the Department of Justice in Washington all inquiries were to be referred without comment to DOJ Civil Division; and movant was given the contact name and telephone number of Jennifer Rivera of that office.

  (e) Repeated conversations with Ms. Rivera resulted in Movant eventually being advised, courteously but firmly, that while Movant's input would be received and "passed along," the identity of the lawyer handling the Pensacola litigation was not yet decided ("we have 15 lawsuits to defend nationwide") and, in any event, Movant should not expect to learn from DOJ its plan to defend the case ("work product") and should not expect reciprocal consultation with DOJ counsel with respect to its handling. Ms. Rivera sought to assure Movant that "we want to win" and would vigorously defend the case.

(d) Movant on April 8, still uninformed as to who would be responsible for defending the case, notified DOJ by e-mail through Ms. Rivera that he would seek to intervene in the litigation, and requested DOJ's consent; to which she replied that DOJ had not yet decided, on April 10, whether to consent to or oppose intervention by other interested persons.

(e) Movant consulted four highly competent lawyers in Jacksonville, Tallahassee and Pensacola, seeking one who might be amenable to pro bono representation of Claimant in the Pensacola litigation, to achieve at a minimum its transfer to Tallahassee, or better yet, its dismissal. They offered helpful advice but no representation in this Court. Hence this Motion.

WHEREFORE, Robert P. Smith, Jr., respectfully prays that the Court grant him intervention as party defendant.

### *MEMORANDUM OF SUPPORT*

The criteria for intervention as of right are exemplified in, for example, Sierra Club, Inc., v. Leavitt, 488 F.3d 904 (11th Cir. 2007).

The necessity for "venue" founded in the "division of this district" in which the litigation is filed, is recognized in NDFlaR. 3.1(a). All venue questions will be more amply briefed upon intervention being granted Movant.

Respectfully,

*[signature]*

Robert P. Smith, Jr., pro se Movant
2007 Lee Avenue Tallahassee FL 32308

(850) 284-1604

Certificate of Service

I DO CERTIFY that a copy hereof was furnished by e-mail and fax to his recorded numbers, to Asst. Att'y Gen. Blaine H. Winship, counsel of record for plaintiffs, and to counsel for the United States, by accustomed e-mail, this April 12, 2010.

*[signature: Robert P. Smith]*

STATE OF FLORIDA

COUNTY OF LEON

Personally appeared before me on this April 12, 2010, Robert P. Smith, Jr., who being sworn says the statements of fact in the foregoing document are true.

*[signature: Robert P. Smith]*

Notary Public *[signature: Carolyn Suzanne Gill]* SEAL

> CAROLYN SUZANNE GILL
> Notary Public, State of Florida
> Commission: DD619788
> My commission expires Dec. 05, 2010