# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

STATE OF FLORIDA et al,               )
                                      )

        Plaintiffs,             )
                                        )

       v.                       )  Case No. 3:10-cv-91-RV-EMT
                                        )

U.S DEPARTMENT OF HEALTH      )
AND HUMAN SERVICES, et al       )
                                        )

        Defendants           )

## REVISED MOTION OF PROPOSED INTERVENOR
## STEVE SCHONBERG TO INTERVENE AS A PLAINTIFF

### Status of Proposed Intervenor Steve Schonberg[1]

1. Schonberg is a plaintiff in Schonberg et al v. Sanders et al, U.S District Court for the Middle District of Florida, Case No. 5:09-cv-534-Oc-32-JRK, filed on December 3, 2009.[2] Prior to the time President Obama signed the "Patient Protection and Affordable Care Act" into law, Schonberg's lawsuit alleged among other things:

A. That 2 U.S.C. §432, §434, §439, and §441i[3] are unconstitutional and in violation of the Constitution, Article I, Section 6, Clause 2[4]:

---

[1] Hereafter referred to as "Schonberg," so as not to be confused with others who may seek to intervene.

[2] Hereafter referred to as "Schonberg's lawsuit."

[3] These sections are part of the Federal Election Campaign Act of 1971, 2 U.S.C.§ 431 et seq., (hereafter referred to as the "**FECA L**aw")



> "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.[5]"

B. That Schonberg's spouse was a patient who, after being forced to move from Florida to New Hampshire because of a lack of health insurance availability in Florida, was gouged by higher and higher premiums with fewer benefits. The only major medical coverage known to her in either New Hampshire or Florida was with New Hampshire's Anthem Health Plan a/k/a Anthem Blue Cross Blue Shield. In the year 2007, the Schonbergs' Anthem insurance premium was huge, approximately $5100 per year. Anthem is owned by WELLPOINT, a profit-making insurance company that is part of Big Health[6] and traded on the New York Stock Exchange under the ticker symbol "WLP." In late 2009 Anthem raised its already outrageous premium for M. Schonberg to approximately $8100 per year, an increase of almost 60% in 2 years.[7]

C. That Schonberg made payments of several thousands of dollars to Anthem in 2008 and 2009.[8]

---

[4] This clause will hereafter be referred to as the "emoluments clause."
[5] Schonberg's lawsuit, Doc. 36, ¶1.
[6] The term "Big Health" refers to the for-profit health insurance industry whose shares are publicly traded.
[7] Schonberg's lawsuit, Doc. 36, ¶4
[8] Id, ¶5

D. That Approximately 25% of these premium payments were the result of a failure in Congress to put an end to "for profit" health insurance companies. The Schonbergs' exorbitant healthcare insurance costs became unaffordable because of the corruption in Congress permitted by the **FECA** Law.[9]

E. That the Chief Executive Officer of WELLPOINT is Angela Braly. According to the FEC, among the tens of thousands of dollars Braly provided in illegal bribes to the members of Congress opposing health care reform was a $2000 gift to U.S. Senator McConnell. Schonberg paid an inflated premium to Anthem whose profits were forwarded to WELLPOINT. Some of Schonberg's premium paid part of Braly's flagrant and scandalous 2008 salary and long term compensation of $9,844,212.[10] Braly then used part of Schonberg's premium to give illegal bribes to Senator McConnell who is and was an opponent of any health care reform that would benefit Schonberg.[11]

F. That WELLPOINT has its own Political Action Committee made up of executives and managers in the company. Named "WELLPOINT, INC.WELLPOINT," the committee has provided $34,350 in illegal bribes to Congressman John Boehner, $24,000 to Congressman Eric Cantor, $16,000 to U.S. Senator Joe Lieberman, $26,000 to U.S. Senator Blanche Lincoln, and

---

[9] Id, ¶6

[10]This amount was reported by the Wall Street Journal as of November 28, 2009 at http://online.wsj.com/quotes/executives.html?mod=2_0471&symbol=wlp&news-symbol=WLP. Our system of government is seriously flawed when captive consumers of health insurance have to help pay bribes which inure to benefit the people who are their captors. The main flaw is the **FECA** Law.

[11]Schonberg's lawsuit, Doc. 36, ¶7

$12,000 to Senator McConnell.[12]  Some of Schonbergs' premiums also paid for these bribes which helped these five legislators make real health care reform a pipe-dream.[13]

G.  That Schonberg incurred outlandish medical expenses as a result of unconstitutional support of Big Health by members of Congress.[14]

H.  In 2009, the legislative support provided to Big Health by corrupt members of Congress was given in a quid pro quo fashion in concert with the members' receipt of hundreds of thousands of dollars in bribes or illegal gratuities, which are referred to in the unconstitutional **FECA** Law as campaign contributions.[15]

I.  That Schonberg's health insurance injuries will continue in the future as long as members of Congress receive bribes and illegal gratuities.  The cause of these injuries is the bribery of, and/or illegal gratuities given to members of Congress by Big Health.  If there were no bribes or illegal gratuities, Congress would probably act in the best interests of Schonberg and the People of the United States.  Real health insurance reform legislation would result.[16]

J.  That members of Congress provide themselves with Cadillac health insurance coverage which is superb.  The U.S. Congress requires that Schonberg and the People of the United States pay for about 75% of the health insurance premiums for the members of Congress. These Cadillac plans cost members of Congress about half of the premium that Schonberg paid for his spouse's insurance; and the Cadillac plans pay for more than twice the medical benefits. Schonberg estimates that he has paid in excess of four times the cost for his spouse's medical

---

[12] The amounts were gathered from the FEC.gov website on November 29, 2009.
[13] Schonberg's lawsuit, Doc. 36, ¶8
[14] Id, ¶9
[15] Id, ¶10
[16] Id, ¶15

4

insurance and care in the years 2007 thru 2009 than each member of Congress would have paid under similar circumstances.[17]

K. That the **FECA** Law's unconstitutional sections have allowed unconscionable campaign contributions, outright bribery of, and/or illegal gratuities given to members of Congress by Big Health. But for this corruption in Congress allowed by the **FECA** Law and paid to members of Congress, Schonberg's spouse would have had no injuries. If there were no **FECA** Law, and the bribes or illegal gratuities continued, members of Congress would be placed in a federal prison.[18]

L. That "Medicare Plus 5%" refers to a health insurance plan put forth in Congress during health reform legislation discussions in 2009. The idea was to allow any citizen of the United States under the age of 65 an option to purchase Medicare insurance at the cost of the insurance plus an additional 5% premium. The plan was a simple, straightforward one which would not have increased taxes; and yet it would provide relief from the unfair burdens addressed in Schonberg's lawsuit. The plan was scuttled by Congress because it probably would have put for-profit health insurance companies like WELLPOINT out of business. The main reason Medicare plus 5% failed to gain the support of Congress was intense lobbying of members of Congress which included illegal bribes unconstitutionally permitted in the **FECA** Law.[19]

M. That the Emoluments Clause forbids a sitting member of Congress from taking on a second job as a civil officer of the United States "under the Authority of the United States..." The **FECA** Law at 2 U.S.C. §432(e)(2) requires that members of Congress who form campaign

---

[17] Id, ¶16
[18] Id, ¶17
[19] Id, ¶18

committees for the purpose of raising campaign gifts ("emoluments[20]") be considered as Agents

of their campaign committees.  This agency relationship creates a civil office under the Authority

of the United States and the members of Congress are the civil officers in charge of the

committees.[21]

    N.  That Congressional Civil Officers and Agents illegally receive, manage and distribute

millions of dollars of **FECA L**aw money while they are also sitting members of Congress.  Here

are pertinent amounts raised by some of the civil officers for the present election cycle:[22]

| | |
|---|---|
| Friends of Bernie Sanders 2005-2010 | $5,813,062 |
| John Boehner Combined PACs for 2010 | $2,148,792 |
| Blanche Lincoln Combined PACs 2005-2010 | $7,094,737 |
| Joe Lieberman Combined PACs 2005-2010 | $20,187,719 |
| Mitch McConnell Combined PACs 2005-2010 | $23,882,771 |
| John McCain Combined PACs 2005-2010 | $20,653,777 |
| Eric Cantor Combined PACs for 2010 | $2,575,223[23] |

    O.  That the above multi-million dollar civil offices are antithetical to the role of the U.S.

Congress envisioned by the Founding Fathers of our Country and the Framers of the

Constitution.  The civil offices do nothing beneficial for the People of the United States of

America.  These civil offices detract the members of our legislature from their duties, ensnare

them in constant fundraising, enrage the electorate, and tarnish the reputation of the United

States in the world community of nations.[24]

---

[20]  *Black's Law Dictionary* defines emolument as "[a]ny perquisite, advantage, profit or gain
arising from the possession of an office."  (6th ed,1990, pg 524)

[21]  Schonberg's lawsuit, Doc. 36, ¶19

[22]  Data retrieved from the Center for Responsive Politics, OpenSecrets.org on November 29,
2009.  Combined PACs include both the Leadership PAC and the Principal Campaign
Committee.

[23]  Schonberg's lawsuit, Doc. 36, ¶ 20

[24]  Id, ¶ 22

P.  That the obscene emoluments received and distributed by Civil Officers and Agents who are members of Congress also unconstitutionally "encrease" over time.  The illicit payments begin shortly after the Defendant Civil Officer and Agent is sworn into office as a member of Congress following her/his last election victory.  As the next election approaches, the bribes and/or illegal gratuities pour into the campaigns in greater and greater amounts.  Sections 432, 434, 439, and 441i of the **FECA L**aw, which authorize and regulate the relationship of  Civil Officers, Agents and directors to their campaign committees are unconstitutional.[25]

Q.  That Senator McConnell has admitted in a prior lawsuit that the American electorate is losing confidence in the democratic process because of the spectre of actual and apparent corruption created by "soft money" and other campaign finance abuses, and because of the climate of evasion of legitimate regulation that has come to characterize our political system.[26]

R.  In their unconstitutional activities as **FECA L**aw civil officers, members of Congress are in violation of several Federal Criminal Statutes, e.g. receiving illegal gratuities, (18 U.S.C. § 201), racketeering (18 U.S.C. §1961) and extortion (18 U.S.C. § 1951.)[27]

S.  Congressman Boehner, an avid golfer, immerses himself in illegal golf emoluments. In 2009, his illegal PAC, "The Freedom Project," put on a golf tournament which treated the congressman and his friends to $31,400 in free golf with all the trimmings at the Naples, Florida Ritz Carlton.[28],[29]

---

[25] Id, ¶ 23
[26] Id, ¶ 24
[27] Id, ¶ 25
[28] From The Washington Post online, By Mary Ann Akers, June 24, 2009
[29] Id, ¶ 26

T. Schonberg's lawsuit asks for an Order for Declaratory Judgment that 2 U.S.C. §432,

§434, §439, and §441i are unconstitutional and in violation of Article I, Section 6, Clause 2 of

the United States Constitution.[30]

## Stage of Proceedings in Schonberg's Lawsuit

2. Schonberg recently filed a motion for Leave to file a Second Amended Complaint

asking that the U.S. Department of Health and Human Services and its Secretary, Kathleen

Sebelius, be joined regarding Emoluments claims similar to those contained herein.

## Standing

3. In addition to the allegations of standing in the Schonberg lawsuit, some of which are

recited above, Schonberg is a private citizen who will be directly impacted by the Mandates and

Tax Penalties contained in the Patient Protection and Affordable Care Act.

## Jurisdiction

4. The Court has jurisdiction of Schonberg's claims under 28 U.S.C. §1346.

## Schonberg's Claims for Intervention

5. That the "Patient Protection and Affordable Care Act" is the fruit of the poisonous

tree,[31] that it is unconstitutional, and in violation of the Emoluments Clause, supra, ¶ 1A.

6. That the mandates described in Plaintiffs' Complaint, ¶s 38, and 63-65, are

unconstitutional and in violation of this same Emoluments Clause of the United States

Constitution.[32]

---

[30] Id, ¶ 27

[31] This phrase refers to the bribery in Congress which caused a severely compromised bill to be put on President Obama's desk. The Act passed by the narrowest of margins and without the support of a single Republican. There is more bipartisanship among the Plaintiff States herein than there was for the passage of the Act.

7.  That the Patient Protection and Affordable Care Act[33] allows a "pass-through" of

unconstitutional mandated health insurance premiums to Big Health executives and

management, who then give bribes to members of Congress in the form of unconstitutional

**FECA L**aw campaign contributions.

### Argument

### INTRODUCTION

The corruption issues confronting Congress in its passage of the Patient Protection and

Affordable Care Act[34] are neither novel nor unfamiliar:[35]

> The idea is to prevent . . . the great aggregations of wealth from using their
> corporate funds, directly or indirectly, to send members of the legislature to
> these halls in order to vote for their protection and the advancement of their
> interests as against those of the public. It strikes at a constantly growing evil
> which has done more to shake the confidence of the plain people of small
> means of this country in our political institutions than any other practice which
> has ever obtained since the foundation of our Government. And I believe that
> the time has come when something ought to be done to put a check to the
> giving of $50,000 or $100,000 by a great corporation toward political purposes
> upon the understanding that a debt is created from a political party to it.

Elihu Root, *Addresses on Government and Citizenship* 143 (Bacon and Scott ed. 1916)

(original statement made before the Constitutional Convention of the State of New York in

**1894**).

Many believe that when an individual or association of individuals makes large

---

[32] There is another clause forbidding the President from receiving emoluments in Article II,
Section 1, Clause 7 of the Constitution.  This clause is not at issue.

[33] The name of the act is misnomer.  It should be called the "new IRS," i.e. Insurance Revenue
Service.  WLP stock has risen substantially in anticipation of increased profitability as a result of
the Act.

[34] Schonberg's references to the corruption in the paragraphs above which quote the Schonberg
lawsuit are literally "just a drop in the bucket" of payoffs during the course of debates on health
insurance reform in Congress in 2009 and 2010.  There was a recent estimate that $3.4 billion
dollars in lobbying money was spent in 2009. (cite omitted.)

[35] This introduction is mainly a verbatim  recitation of the Introduction in the May 1, 2003
Opinion of COLLEEN KOLLAR-KOTELLY, *District Judge*, in McConnell v. FEC and
obtained at http://fec.gov/pages/bcra/mem_opinion_kollar_kotelly.pdf

> contributions for the purpose of aiding candidates of political parties in winning the elections, they expect, and sometimes demand, and occasionally, at least, receive, consideration by the beneficiaries of their contributions which not infrequently is harmful to the general public interest.

65 Cong. Rec. 9507-9508 (**1924**) (Statement of Sen. Joseph Robinson).

> We all know that money is the chief source of corruption. We all know that large contributions to political campaigns not only put the political party under obligation to the large contributors, who demand pay in the way of legislation, but we also know that large sums of money are used for the purpose of conducting expensive campaigns through the newspapers and over the radio; in the publication of all sorts of literature, true and untrue; and for the purpose of paying the expenses of campaigners sent out into the country to spread propaganda, both true and untrue.

86 Cong. Rec. 2720 (**1940**) (Statement of Sen. John Bankhead).

> The unchecked rise in campaign expenditures coupled with the absence of limitations on contributions and expenditures, has increased the dependence of candidates on special interest groups and large contributors.

H.R. Rep. No. 93-1239, at 3 (**1974**).

> We have gone from basically a small donor system in this country where the average person believed they had a stake, believed they had a voice, to one of extremely large amounts of money, where you are not a player unless you are in the $100,000 or $200,000 range, many contributions in the $500,000 range, occasionally you get a $1 million contribution. . . . Many Members are tired of picking up the paper every day and reading about an important issue we are going to be considering, one in which many interests have large sums at stake and then the second part of the story reading about the large amounts of money that are being poured into Washington on one side or the other of the issue--the implication, of course being clear, that money talks and large amounts of money talk the loudest.

147 Cong. Rec. S2958 (daily ed. March 27, **2001**) (statement of Senator Fred Thompson).  And corruption in Congress has now exploded such that the average American will now be forced to help bribe Congressional fiefdoms known as **FECA L**aw "campaign committees" by virtue of the mandates contained in the Patient Protection and Affordable Care Act.

### SCHONBERG IS ENTITLED TO INTERVENE
### IN THIS ACTION AS A MATTER OF RIGHT

8. Schonberg seeks to intervene under the Federal Rules of Civil Procedure,

Rule 24(a)(2) which reads:

**(a) Intervention of Right.**

On timely motion, the court must permit anyone to intervene who:

(2) claims an interest relating to the property or transaction that is the
subject of the action, and is so situated that disposing of the action may as
a practical matter impair or impede the movant's ability to protect its
interest, unless existing parties adequately represent that interest.

9. An existing suit within a court's jurisdiction is a prerequisite to an intervention.

*Hofheimer v. McIntee*, C.A.7 (Ill.) 1950, 179 F.2d 789, cert denied, 71 S.Ct. 47, 340 U.S. 817.

Schonberg's lawsuit meets this prerequisite.

10. The party seeking to intervene as of right must meet four requirements: (1) the

applicant must timely move to intervene; (2) the applicant must have a significantly protectable

interest relating to the property or transaction that is the subject of the action; (3) the applicant

must be situated such that the disposition of the action may impair or impede the party's ability

to protect that interest; and (4) the applicant's interest must not be adequately represented by

existing parties. *Arakaki v. Cayetano*, C.A.9 (Hawaii) 2003, 324 F.3d 1078, as amended, cert.

denied 124 S.Ct. 570, 540 U.S. 1017.

11. Schonberg meets (1), supra, having filed his motion just several days after the

Plaintiffs' original Complaint was filed and prior to any response by the Defendants.  Schonberg

meets (2) and (3), supra, because Schonberg's lawsuit presently challenges the validity of the

process by which the Patient Protection and Affordable Care Act[36] was enacted.  Although

Schonberg contends that the Act is unconstitutional for different reasons, this Court's disposition

---

[36] "The Act" referred to below is the Patient Protection and Affordable Care Act.

of that issue will impair and impede Schonberg's ability to make his arguments on the same Act, but in a different federal court. [37] The rulings in this Court may or may not be consistent with rulings in the U.S. District Court for the Middle District of Florida. Schonberg is subject to the unconstitutional mandates and tax penalties contained in the Act.

12.  Schonberg meets (4), supra, because none of the parties have or will they probably allege the Schonberg lawsuit claims of unconstitutionality based on the Emoluments Clause. If intervention were permitted, Schonberg would also be the only plaintiff to be mandated to buy insurance if the Act is not overturned by this Court. Schonberg's claims for intervention are direct, substantial, and legally protectable. *City of Stillwell, Okl. V. Ozarks Rural Elec. Co-op. Corp.* C.A. 10 (Okla.) 1996, 79 F.3d 1038, Federal Civil Procedure, sec. 315.

SCHONBERG IS ENTITLED TO PERMISSIVE INTERVENTION

13.  The Court may grant permissive intervention under FRCP, Rule 24(b):

**(1) In General.**

> On timely motion, the court may permit anyone to intervene who:
>
> (A) is given a conditional right to intervene by a federal statute; or
>
> (B) has a claim or defense that shares with the main action a common question of law or fact.

14.  In its discretion the Court should grant permissive intervention in order to save the time and resources of the federal courts. There is no point in having Schonberg litigate two or three different cases that all deal with the issues raised in this motion. Two important purposes of the rule allowing intervention are to foster economy of judicial administration and to protect nonparties from having their interests adversely affected by litigation conducted without their

---

[37] Schonberg alleged the Patient Protection and Affordable Care Act was unconstitutional based on the Emoluments clause in his response to the FEC's second motion to dismiss and in Schonberg's motion to file a second amended complaint in the Schonberg lawsuit.

participation. *Stallworth v. Monsanto Co.*, C.A.5 (Fla.) 1977, 558 F.2d 257. If this motion to intervene is granted, Schonberg can and will dismiss the lawsuit pending in Ocala, Florida.[38]

15. The Court may grant permissive intervention only if three conditions are met: movant must show an independent ground for jurisdiction; motion must be timely; and movant's claim or defense and the main action must have a question of law and fact in common. *Venegas v. Skaggs*, C.A.9 (Cal.) 1989, 867 F.2d 527, rehearing denied, affirmed 110 S.Ct. 1679, 495 U.S. 82, (internal cites omitted.) Federal Civil Procedure Sections 315,319. Schonberg has met the three prerequisites.

**WHEREFORE,** Steve Schonberg moves the Court for its Order allowing him to intervene as a party plaintiff to this matter.

Proposed Intervenor Steve Schonberg, pro se
Candidate, U.S. House of Representatives,
Florida District 06[39]
7938 SE 12th
Ocala, FL. 34480
352-789-0610
Email: sschonberg@aol.com

---

[38] The FEC's 2nd Motion to Dismiss primarily had a new allegation that Schonberg's candidacy for the U.S. House of Representatives was insufficient to allow standing. If the Court in Ocala dismisses the Schonberg lawsuit on those grounds, it would result in an appeal and the initiation of a second Schonberg lawsuit filed alleging both old and new grounds for standing, including the unconstitutional mandate in the Patient Protection and Affordable Care act. For a suggestion on how to replace the **FECA L**aw, see http://perfectunion1787.com/

[39] Schonberg became a candidate on February 15, 2010.

## CERTIFICATION OF SERVICE:

The undersigned hereby Certifies that on **Monday, April 19, 2010** he sent by Express U.S. Mail this pleading for filing upon receipt to the Clerk of Court, Pensacola Office, United States District Court for the Northern District of Florida.

Pursuant to Doc.7, Order of the Honorable Senior United States District Judge Roger Vinson, and Rules 5(b) and (d) of the Federal Rules of Civil Procedure, the undersigned served the following a fully executed copy of this pleading via email and Certified U.S. Mail, return receipt requested , on **April 19, 2010** to:

Eric Holder
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
EMAIL: askdoj@usdoj.gov

Kathleen Sebelius, Secretary
U.S. Department of Health and Human
Services
200 Independence Avenue, S.W.
Washington, D.C. 20201
EMAIL: Kathleen.Sebelius@hhs.gov

Timothy Geithner, Secretary
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220
EMAIL: Timothy.Geithner@do.treas.gov

Hilda L. Solis, Secretary
U.S. Department of Labor
200 Constitution Ave., NW
Washington, DC 20210
EMAIL: executivesecretariat@dol.gov

Thomas F. Kirwin
Acting U.S. Attorney
Northern District of Florida
Pensacola Branch
21 East Garden Street
Suite 400
Pensacola, FL 32502
EMAIL: Thomas.Kirwin@usdoj.gov

Steve Schonberg, pro se

14