**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**Pensacola Division**

**Case No.: 3:10-cv-91-RV/EMT**

**STATE OF FLORIDA, by and through**
**BILL McCOLLUM, ATTORNEY GENERAL**
**OF THE STATE OF FLORIDA;**

**STATE OF SOUTH CAROLINA, by and through**
**HENRY McMASTER, ATTORNEY GENERAL**
**OF THE STATE OF SOUTH CAROLINA;**

**STATE OF NEBRASKA, by and through**
**JON BRUNING, ATTORNEY GENERAL**
**OF THE STATE OF NEBRASKA;**

**STATE OF TEXAS, by and through**
**GREG ABBOTT, ATTORNEY GENERAL**
**OF THE STATE OF TEXAS;**

**STATE OF UTAH, by and through**
**MARK L. SHURTLEFF, ATTORNEY GENERAL**
**OF THE STATE OF UTAH;**

**STATE OF LOUISIANA, by and through**
**JAMES D. "BUDDY" CALDWELL, ATTORNEY**
**GENERAL OF THE STATE OF LOUISIANA;**

**STATE OF ALABAMA, by and through**
**TROY KING, ATTORNEY GENERAL**
**OF THE STATE OF ALABAMA;**

**MICHAEL A. COX, ATTORNEY GENERAL**
**OF THE STATE OF MICHIGAN, ON BEHALF OF**
**THE PEOPLE OF MICHIGAN;**

**STATE OF COLORADO, by and through**
**JOHN W. SUTHERS, ATTORNEY GENERAL**
**OF THE STATE OF COLORADO;**

**COMMONWEALTH OF PENNSYLVANIA, by**
**and through THOMAS W. CORBETT, Jr.,**

**ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA;**

**STATE OF WASHINGTON, by and through ROBERT M. McKENNA, ATTORNEY GENERAL OF THE STATE OF WASHINGTON;**

**STATE OF IDAHO, by and through LAWRENCE G. WASDEN, ATTORNEY GENERAL OF THE STATE OF IDAHO;**

**STATE OF SOUTH DAKOTA, by and through MARTY J. JACKLEY, ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA;**

**STATE OF INDIANA, by and through GREGORY F. ZOELLER, ATTORNEY GENERAL OF THE STATE OF INDIANA;**

**STATE OF NORTH DAKOTA, by and through WAYNE STENEJHEM, ATTORNEY GENERAL OF THE STATE OF NORTH DAKOTA;**

**STATE OF MISSISSIPPI, by and through HALEY BARBOUR, GOVERNOR OF THE STATE OF MISSISSIPPI;**

**STATE OF ARIZONA, by and through JANICE K. BREWER, GOVERNOR OF THE STATE OF ARIZONA;**

**STATE OF NEVADA, by and through JIM GIBBONS, GOVERNOR OF THE STATE OF NEVADA;**

**STATE OF GEORGIA, by and through SONNY PERDUE, GOVERNOR OF THE STATE OF GEORGIA;**

**STATE OF ALASKA, by and through DANIEL S. SULLIVAN, ATTORNEY GENERAL OF THE STATE OF ALASKA;**

**NATIONAL FEDERATION OF INDEPENDENT BUSINESS, a California nonprofit mutual benefit corporation;**

2

**MARY BROWN, an individual; and**

**KAJ AHLBURG, an individual;**

   **Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
KATHLEEN SEBELIUS, in her official
capacity as the Secretary of the United States
Department of Health and Human Services;
UNITED STATES DEPARTMENT OF
THE TREASURY; TIMOTHY F.
GEITHNER, in his official capacity as the
Secretary of the United States Department
of the Treasury; UNITED STATES
DEPARTMENT OF LABOR; and HILDA
L. SOLIS, in her official capacity as Secretary
of the United States Department of Labor,**

   **Defendants.**

_____/

## AMENDED COMPLAINT

Pursuant to Rule 15(a), Federal Rules of Civil Procedure, and paragraph A of the

Final Scheduling Order entered by the Court on April 14, 2010, Plaintiffs file this

Amended Complaint against Defendants and state:

### NATURE OF THE ACTION

1.      This is an action seeking declaratory and injunctive relief from the

"Patient Protection and Affordable Care Act," P.L. 111-148, as amended by the "Health

Care and Education Reconciliation Act of 2010," P.L. 111-152 (collectively the Act).

The Act's mandate that all citizens and legal residents of the United States maintain

qualifying healthcare coverage or pay a penalty (individual mandate) is an unprecedented

3

encroachment on the sovereignty of the Plaintiff States and on the rights of their citizens, including members of Plaintiff National Federation of Independent Business (NFIB) and individual Plaintiffs Mary Brown and Kaj Ahlburg.  By imposing such a mandate, the Act: exceeds the powers of the United States under Article I of the Constitution, particularly the Commerce Clause; violates the Ninth and Tenth Amendments and the Constitution's principles of federalism and dual sovereignty; and violates the Fifth Amendment's Due Process Clause.  In the alternative, if the penalty required under the Act is a tax, it constitutes an unlawful capitation or direct tax in violation of Article I, sections 2 and 9 of the Constitution.

2.      The Act further violates the Constitution by forcing the Plaintiff States to operate a wholly refashioned Medicaid program.  The Act converts Medicaid from a federal-State partnership to provide a safety net for the needy into a federally-imposed universal healthcare regime, in which the discretion of the Plaintiff States has been removed and new requirements and expenses forced upon them in derogation of their sovereignty.  In so doing, the Act violates the Ninth and Tenth Amendments and the Constitution's principles of federalism.

3.      Plaintiffs seek declaratory and injunctive relief against the Act's operation in order to avoid an unprecedented and unconstitutional intrusion by the federal government into the private affairs of every American and to preserve Plaintiff States' respective sovereignty, as guaranteed by the Constitution.

## JURISDICTION AND VENUE

4.     The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States and further has jurisdiction to render declaratory relief under 28 U.S.C. § 2201.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(3) because no real property is involved, the district is situated in Florida, and the defendants are agencies of the United States or officers thereof acting in their official capacity.

## PARTIES

6.     The State of Florida, by and through Bill McCollum, Attorney General of Florida, is a sovereign State in the United States of America.

7.     The State of South Carolina, by and through Henry McMaster, Attorney General of South Carolina, is a sovereign State in the United States of America.

8.     The State of Nebraska, by and through Jon Bruning, Attorney General of Nebraska, is a sovereign State in the United States of America.

9.     The State of Texas, by and through Greg Abbott, Attorney General of Texas, is a sovereign State in the United States of America.

10.     The State of Utah, by and through Mark L. Shurtleff, Attorney General of Utah, is a sovereign State in the United States of America.

11.     The State of Alabama, by and through Troy King, Attorney General of Alabama, is a sovereign State in the United States of America.

12.     The State of Louisiana, by and through James D. "Buddy" Caldwell, Attorney General of Louisiana, is a sovereign State in the United States of America.

13.     Michael A. Cox, Attorney General of Michigan, is bringing this action on behalf of the People of Michigan under Mich. Comp. Law § 14.28, which provides that the Michigan Attorney General may "appear for the people of [Michigan] in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of [Michigan] may be a party or interested."  Under Michigan's constitution, the people are sovereign.   Mich. Const. art. I, § 1 ("All political power is inherent in the people. Government is instituted for their equal benefit, security,. and protection.").

14.     The State of Colorado, by and through John W. Suthers, Attorney General of Colorado, is a sovereign State in the United States of America.

15.     The Commonwealth of Pennsylvania, by and through Thomas W. Corbett, Jr., Attorney General of Pennsylvania, is a sovereign State in the United States of America.

16.     The State of Washington, by and through Robert A. McKenna, Attorney General of Washington, is a sovereign State in the United States of America.

17.     The State of Idaho, by and through Lawrence G. Wasden, Attorney General of Idaho, is a sovereign State in the United States of America.

18.     The State of South Dakota, by and through Marty J. Jackley, Attorney General of South Dakota, is a sovereign State in the United States of America.

19.     The State of Indiana, by and through Gregory F. Zoeller, Attorney General of Indiana, is a sovereign State in the United States of America.

20.     The State of North Dakota, by and through Wayne Stenehjem, Attorney General of North Dakota, is a sovereign State in the United States of America.

21.     The State of Mississippi, by and through Haley Barbour, Governor of Mississippi, is a sovereign State in the United States of America.

22.     The State of Arizona, by and through Janice K. Brewer, Governor of Arizona, is a sovereign State in the United States of America.

23.     The State of Nevada, by and through Jim Gibbons, Governor of Nevada, is a sovereign State in the United States of America.

24.     The State of Georgia, by and through Sonny Perdue, Governor of Georgia, is a sovereign State in the United States of America.

25.     The State of Alaska, by and through Daniel S. Sullivan, Attorney General of Alaska, is a sovereign State in the United States of America.

26.     The National Federation of Independent Business (NFIB), a California nonprofit mutual benefit corporation, is the nation's leading association of small businesses, including individual members, and has a presence in all 50 States and the District of Columbia.  NFIB's mission is to promote and protect the rights of its members to own, operate, and earn success in their businesses, in accordance with lawfully-imposed governmental requirements.  The NFIB Small Business Legal Center is a nonprofit, public interest law firm established to provide legal resources and be the voice for small businesses in the nation's courts through representation on issues of public interest affecting small businesses.  NFIB's members include individuals who object to: forced compliance with the Act's mandate that they obtain qualifying healthcare insurance or pay a penalty; diversion of resources from their businesses that will result from complying with the mandate; and the Act's overreaching and unconstitutional

encroachment on the States' sovereignty.  NFIB joins in those objections on behalf of its members.  NFIB's services to its members include providing information regarding legal and regulatory issues faced by small businesses, including individuals.  NFIB will incur additional costs in assisting its members in understanding how the Act applies to them and affects their businesses.

27.     Mary Brown is a citizen and resident of the State of Florida and a citizen of the United States. She is self-employed, operating Brown & Dockery, Inc., an automobile repair facility in Panama City, Florida, and is a member of NFIB.  Ms. Brown has not had healthcare insurance for the last four years, and devotes her resources to maintaining her business and paying her employees.  She does not qualify for Medicaid under the Act or Medicare and does not expect to qualify for them prior to the Act's individual mandate taking effect.  Ms. Brown will be subject to the mandate and objects to being forced to comply with it, and objects to the Act's unconstitutional overreaching and its encroachment on the States' sovereignty.

28.     Kaj Ahlburg is a citizen and resident of the State of Washington and a citizen of the United States.  Mr. Ahlburg has not had healthcare insurance for more than six years, does not have healthcare insurance now, and has no intention or desire to have healthcare insurance in the future.  Mr. Ahlburg is and reasonably expects to remain financially able to pay for his own healthcare services if and as needed.  He does not qualify for Medicaid under the Act or Medicare and does not expect to qualify for them prior to the Act's individual mandate taking effect.  Mr. Ahlburg will be subject to the mandate and objects to being forced to comply with it, and objects to the Act's

unconstitutional overreaching and its encroachment on the States' sovereignty. (Plaintiffs Brown and Ahlburg are referred to as the Individual Plaintiffs.)

29.     The Department of Health and Human Services (HHS) is an agency of the United States, and is responsible for administration and enforcement of the Act, through its center for Medicare and Medicaid Services.

30.     Kathleen Sebelius is Secretary of HHS, and is named as a party in her official capacity.

31.     The Department of the Treasury (Treasury) is an agency of the United States, and is responsible for administration and enforcement of the Act.

32.     Timothy F. Geithner is Secretary of the Treasury, and is named as a party in his official capacity.

33.     The Department of Labor (DOL) is an agency of the United States, and is responsible for administration and enforcement of the Act.

34.     Hilda L. Solis is Secretary of DOL, and is named as a party in her official capacity.

## FACTUAL ALLEGATIONS

### The Unprecedented and Unconstitutional Individual Mandate

35.     The Act mandates that all persons who are citizens or legal residents of any State within the United States, including NFIB members and the Individual Plaintiffs, must have and maintain qualifying healthcare coverage, regardless of whether they wish to do so, to avoid having to pay a penalty.  Many individuals, including NFIB members and the Individual Plaintiffs, will be forced to purchase the required coverage with their

own assets, without contribution or subsidy from the federal government.  If a person fails to maintain such coverage, the federal government will force that person to pay a penalty, the amount of which will be increased gradually through 2016, reaching 2.5 percent of household income or $695 per year (up to a maximum of three times that amount ($2,085)) per family, whichever is greater.  After 2016, the penalty will increase annually based on a cost-of-living adjustment.

36.     Exemptions to the penalty apply for individuals with certain religious objections, individuals who belong to certain faith-based healthcare cooperative organizations, American Indians, persons without coverage for less than three months, undocumented immigrants, incarcerated individuals, persons for whom the lowest cost plan option exceeds 8 percent of income, individuals with incomes below the tax filing threshold, and persons with financial hardships.  Millions of individuals will be forced to choose between having qualified coverage and paying the penalty.

37.     Congress never before has imposed a mandate that all citizens buy something—in this case health insurance—or pay a penalty.  According to the non-partisan Congressional Budget Office (CBO), "the imposition of an individual mandate [to buy health insurance] . . . would be unprecedented.  The government has never required people to buy any good or service as a condition of lawful residence in the United States."  THE BUDGETARY TREATMENT OF AN INDIVIDUAL MANDATE TO BUY HEALTH INSURANCE, CBO MEMORANDUM (August 1994), http://www.cbo.gov/ftpdocs/48xx/doc4816/doc38.pdf (last visited May 11, 2010).  The CBO added that an individual mandate could "transform the purchase of health insurance

from an essentially voluntary private transaction into a compulsory activity mandated by law." *Id.*

38.     Congress lacks the constitutional authority to enact the individual mandate.  The Constitution limits Congress's authority to the specific powers enumerated in Article I, and thus does not grant unlimited authority to Congress.  None of Congress's enumerated powers includes the authority to force every American to buy a good or service on the private market or face a penalty.  For the first time, Congress under the Act is attempting to regulate and penalize Americans for choosing not to engage in economic activity.  If Congress can do this much, there will be virtually no sphere of private decision-making beyond the reach of federal power.

### Medicaid Program Prior to the Act

39.     Medicaid was established by Title XIX of the Social Security Act of 1965, 42 U.S.C. §§ 1396 *et seq.*, as the nation's major healthcare program for low-income persons.  The States and the federal government have funded each participating State's Medicaid program jointly.

40.     From the beginning of Medicaid until passage of the Act, the States were given considerable discretion to implement and operate their respective Medicaid programs in accordance with State-specific designs regarding eligibility, enrollment, and administration, so long as the programs met broad federal requirements.

41.     At the outset of Medicaid, the States were free to opt in and establish their own State health or welfare plans or to provide no benefits at all.  None of the Plaintiff States agreed to become a Medicaid partner of the federal government with an

expectation that: a) the terms of its participation would be altered significantly; b) the federal government would increase significantly its own control and reduce significantly that State's discretion over the Medicaid program; c) the federal government would alter the program's requirements to expand eligibility for enrollment beyond the State's ability to fund its participation; d) the federal government would alter the program from requiring that States pay for healthcare services to requiring that States provide such services; or e) the federal government would exercise its control over Medicaid terms and eligibility as part of a coercive scheme to force all citizens and residents of the States to have healthcare coverage.

### The Act's Injurious Impact on the Federal-State Healthcare Partnership

42.     The Act greatly alters the federal-State relationship, to the detriment of the Plaintiff States, with respect to Medicaid programs, their insurance regulatory role, and healthcare coverage generally.

43.     The Act transforms Medicaid from federal-State partnerships into a broad federally-controlled program that deprives the States of the ability to define healthcare program eligibility and attributes, and eliminates States' historic flexibility to make cost-saving and other adjustments to their respective Medicaid programs.  The Act also sets new increased Medicaid rates for primary-care practitioners' reimbursements, which States must substantially fund, and changes the manner in which drug rebates are allocated between the federal government and States in a manner that financially benefits the federal government at the States' expense.

44.     The Act requires each State to expand massively its Medicaid program and to create a statewide exchange, which must be either a State governmental agency or a nonprofit entity established by the State for this purpose, through which the citizens and residents of that State can purchase healthcare insurance.  If a State does not satisfy federal requirements to progress toward creation of an intrastate insurance exchange between now and the end of 2012, or chooses not to operate an exchange, the federal government (or its contractor) will establish and administer an intrastate exchange within that State.  This action would displace State authority over a substantial segment of intrastate insurance regulation (e.g., licensing and regulation of intrastate insurers, plans, quality ratings, coordination with Medicaid and other State programs, and marketing) that the States have always possessed under the police powers provided in the Constitution, and subject the States to possible exchange-related penalties.

45.     Participation in the Act will force the States to expand their Medicaid coverage to include all individuals under age 65 with incomes up to 133 percent of the federal poverty level.  The federal government will fund much of the cost initially, but States' coverage burdens will increase significantly after 2016, both in actual dollars and in proportion to the contributions of the federal government.

46.     The Act further requires that States provide healthcare services to enrollees, a significant new obligation that goes far beyond the States' pre-Act responsibility for funding healthcare services under their respective Medicaid programs. This obligation will expose the States to significant increased litigation risks and costs.

47.     The federal government will not provide full funding or resources to the States to administer the Act.   Each State must oversee the newly-created intrastate insurance market by instituting regulations, consumer protections, rate reviews, solvency and reserve fund requirements, and premium taxes.   Each State also must enroll all of the newly-eligible Medicaid beneficiaries (many of whom will be subject to a penalty if they fail to enroll), coordinate enrollment with the new intrastate insurance exchange, and implement other specified changes.   The Act further requires each State to establish a reinsurance program by 2014, to administer a premium review process, and to cover costs associated with State-mandated insurance benefit requirements that States previously could impose without assuming a cost.

48.     In addition, the Act imposes new requirements on the Plaintiff States that interfere with their ability to perform governmental functions.   Effective in 2014, the Plaintiff States, as large employers, must automatically enroll employees working 30 or more hours a week into health insurance plans, without regard for current State practice, policy preferences, or financial constraints.   The Act's individual mandate effectively will force many more State employees into State insurance plans than the Plaintiff States now allow, at a significant added cost to the States.   Moreover, the States will be subject to substantial penalties and taxes prescribed by the Act, at a cost of thousands of dollars per employee, for State employees who obtain subsidized insurance from an exchange instead of from a State plan, or if the State plan offers coverage that is either too little or too generous as determined by the federal government.   New tax reporting requirements

prescribed by the Act also will burden the Plaintiff States' ability to source goods and services as necessary to carry out governmental functions.

### The Act's Injurious Impact on Plaintiffs

49.     The Act will have a profound and injurious impact on all Plaintiff States. Florida's circumstances, as described below, are not identical to the circumstances in all of the Plaintiff States, but fairly represent the nature of the burdens the Act imposes on the Plaintiff States.

50.     Based on United States Census Bureau statistics from 2008, Florida has 3,641,933 uninsured persons living in the State.  Of those persons, 1,259,378 are below 133 percent of the federal poverty line; therefore, the Act requires that Florida add them to its Medicaid rolls.

51.     Even before passage of the Act, the Medicaid program imposed a heavy cost on Florida, consuming 26 percent of its annual budget.  For fiscal year 2009-2010 alone, Florida will spend more than $18 billion on Medicaid, servicing more than 2.7 million persons.  Florida's Medicaid contributions and burdens, from the implementation of its Medicaid program in 1970 to the present, have gradually increased to the point where it would be infeasible for Florida to cease its participation in Medicaid before the Act takes effect and make alternate arrangements for a traditional Medicaid-like program.

52.     The federal government currently contributes 67.64 percent of every dollar Florida spends on Medicaid, a percentage that is temporarily inflated because of federal stimulus outlays.  Under the current pre-Act program, after this year, the percentage of Florida's Medicaid expenses covered by the federal government would decline, and by

2011 would reach 55.45 percent, a level that is closer to the recent average.  The federal government's contribution under the Act, though providing more aid for newly-eligible persons, will not fully compensate Florida for the dramatic increase to its Medicaid rolls, increased reimbursement rates for primary-care practitioners, and other substantial costs that it must bear under the Act.

53.     Florida's Agency for Health Care Administration (AHCA) estimates that at least 80 percent of persons who have some form of health insurance but fall below 133 percent of the federal poverty level will drop their current plans and enroll in Medicaid, because they are newly eligible under the Act.  The Act does not provide full funding for the States' cost of covering these already-covered persons.  These persons represent a significant additional cost to Florida under the Act.

54.     The Act also makes a large new class of persons eligible for Medicaid in Florida.  Prior to passage of the Act, only certain specified low-income individuals and families qualified for Medicaid.  Moreover, the qualifying income level set by Florida was generally much lower than the level of 133 percent of the federal poverty line set by the federal government under the Act.  Now, Florida also must add to its Medicaid rolls every childless adult whose income falls below 133 percent of the federal poverty line, consistent with the Act's fundamental change in Medicaid from a federal-State partnership to provide a safety net for the needy into a federally-imposed regime for universal healthcare coverage.

55.     Prior to passage of the Act, AHCA was Florida's designated State Medicaid agency tasked with developing and carrying out policies related to the

Medicaid program.  The Act will strip away much of the State's authority to establish and execute policies, transferring that authority to the federal government.  Indeed, the Act renders AHCA and other Florida agencies mere arms of the federal government and commandeers and forces AHCA employees to administer what now is essentially a federal universal healthcare program.

56.     AHCA projects a cost to Florida in the billions of dollars between now and 2019, stemming from Medicaid-related portions of the Act.  The annual cost will continue to grow in succeeding years.  AHCA's projections, moreover, understate the Act's adverse impact on Florida.  They do not include estimated costs to be borne by Florida to administer the Act or to prepare for the Act's implementation.  Such costs will include hiring and training new staff, creating new information technology infrastructures, developing an adequate provider base, creating a scheme for accountability and quality assurance, and incurring many other expenses.

57.     The Act requires that Florida immediately begin to devote funds and other resources to implement sweeping changes across multiple agencies of government.  Such implementation burdens include, but are not limited to: a) enforcing the Act's immediately-effective terms; b) determining gaps between current resources in State government and the Act's requirements; c) evaluating infrastructure to consider how new programs and substantial expansion of existing programs will be implemented (e.g., new agencies, offices, etc.); d) developing a strategic plan and coordinating common issues across State agencies; e) initiating legislative and regulatory processes, while at the same time monitoring and engaging the substantial federal regulatory processes to ensure that

State interests are protected; f) electing whether to participate in optional programs set forth in the Act; g) satisfying the Act's interim targets; and h) developing a communications structure and plan to disseminate new information regarding changes brought about by the Act to the many affected persons and entities.

58.     The Act further requires Florida to enroll in healthcare insurance plans categories of State employees not previously covered by State-funded healthcare insurance plans.  The Act subjects the State to penalties, depending upon the coverage decisions made by its employees, and limits the State's ability to determine coverage.  If the State's plan for its employees is deemed inadequate by the federal government, the State will be subject to penalties.  If the State's plan is deemed too generous or expansive by the federal government, the State will be subject to a distinct federal tax liability.

59.     The Act also requires that Florida be responsible for providing healthcare services for all Medicaid enrollees in the expanded program, a significant change from Florida's responsibility for providing payment for such services.   This added responsibility and resulting new legal liabilities further contribute to the Act's substantial and costly impact on Florida's fisc, and will force the State to ignore other critical needs, including education, corrections, law enforcement, and more.

60.     In sum, as demonstrated through the effects on Florida, the Act infringes on the Plaintiff States' constitutional status as sovereigns, entitled to cooperate with but not to be controlled by the federal government under the Medicaid program.

61.     In addition, the Act will have a profound and injurious impact on the Plaintiff States' citizens and residents, a significant number of whom are or will be subject to the Act's mandate to obtain qualifying healthcare coverage or pay a penalty.

62.     The Act further will have a profound and injurious impact on NFIB's individual members and its uninsured small business owners, including Ms. Brown, who are and will continue to be subject to the Act's mandate to obtain qualifying healthcare coverage or pay a penalty.  Because of the mandate, these members will be forced to divert resources from their business endeavors, or otherwise to reorder their economic circumstances, in order to obtain qualifying healthcare coverage, regardless of their own conclusions on whether or not obtaining and maintaining such coverage for themselves and their dependents is a worthwhile cost of doing business.  The added costs of the mandate will threaten the members' ability to maintain their own, independent businesses.

63.     An important service offered by NFIB to its membership is the provision of information and assistance regarding legal and regulatory compliance issues faced by small businesses, as well as questions involving healthcare insurance and benefits.  In order fully to serve the needs and interests of its membership, NFIB now will be forced to devote its own scarce resources to assisting members in understanding how the Act, including the mandate to obtain qualifying coverage or pay a penalty, applies to them, how it will affect their businesses, and what they must do to comply.

64.     The Act also will injure Mr. Ahlburg, who will be subject to the Act's mandate to obtain qualifying healthcare coverage or pay a penalty.

**The Act's Requirements and Effects on the Plaintiff States Cannot Be Avoided**

65.     Plaintiff States cannot avoid the Act's requirements.  Neither the Act nor current federal Medicaid provisions prescribe a mechanism for a State to opt out of the Act's new Medicaid requirements, to opt out of Medicaid generally, or to transition to another program that provides only traditional Medicaid services.

66.     Moreover, if they were to end their longstanding participation in Medicaid, Plaintiff States would desert millions of their residents, leaving them without access to the healthcare services they have depended on for decades under Medicaid.  Thus, Plaintiff States are forced to accept the harmful effects of the Act on their fiscs and their sovereignty.

67.     Prior to passage of the Act, Medicaid and its corresponding law, regulations, guidance, policies, and framework had been well-established, subject to occasional limited modifications, for more than four decades.  During that time, participating States developed their respective Medicaid programs in reliance on Medicaid continuing to be a partnership with the federal government.

68.     Presently, the Centers for Medicare and Medicaid (CMS), the federal agency with chief responsibility for administering Medicaid for the federal government, will terminate a State's federal funding for Medicaid unless the State complies with the Act's requirements.   In addition, Medicaid requirements are linked to other federal programs, and the benefits of those programs to a State and its citizens and residents would be in jeopardy if the federal government were to terminate the State's participation in Medicaid.

**CAUSES OF ACTION**

**COUNT ONE**

**UNCONSTITUTIONAL MANDATE THAT ALL INDIVIDUALS
HAVE HEALTHCARE INSURANCE COVERAGE OR PAY A
PENALTY
(Const. art. I & amend. IX, X)**

69.     Plaintiffs reallege, adopt, and incorporate by reference paragraphs 1 through 68 above as though fully set forth herein.

70.     The Act forces all Americans, including NFIB members and the Individual Plaintiffs, regardless of whether they want healthcare coverage, to obtain and maintain a federally-approved level of coverage or pay a penalty.  The Act thus compels all Americans to perform an affirmative act or incur a penalty, simply on the basis that they exist and reside within any of the United States.  In so doing, the Act purports to exercise the very type of general police power the Constitution reserves to the States and denies to the federal government.

71.     The Act is directed to a lack of, or failure to engage in, activity that is driven by the choices of individual Americans.  Such inactivity by its nature cannot be deemed to be in commerce or to have such an effect on commerce, whether interstate or otherwise, as to be subject to Congress's powers under the Commerce Clause, Const. art. I, § 8.  Nor does the Act regulate (directly or indirectly) any properly regulable interstate or foreign market or other commerce, any instrumentality of interstate or foreign commerce, or the actual flow of goods, services, and human beings among the States.  As a result, the Act cannot be upheld under the Commerce Clause.

72.     The Act infringes upon Plaintiff States' sovereign interests by coercing many persons to enroll in an expanded Medicaid program at a substantial cost to Plaintiff States, or to obtain coverage from intrastate exchanges that States must establish to avoid loss of substantial regulatory authority.   The Act also denies Plaintiff States their sovereign ability to confer rights upon their citizens and residents to make healthcare decisions without government interference, including the decision not to participate in any healthcare insurance program or scheme, in violation of the Ninth and Tenth Amendments to the Constitution and the constitutional principles of federalism and dual sovereignty on which this Nation was founded.

73.     The Act's penalty on uninsured persons unlawfully coerces persons to obtain healthcare coverage without purposing to raise revenue and injures the Plaintiff States' fiscs, because many persons will be compelled to enroll in Medicaid at a substantial cost to Plaintiff States or to get coverage from intrastate exchanges that Plaintiff States must establish to avoid loss of substantial regulatory authority.   As a result, the Act cannot be upheld under the Taxing and Spending Clause, Const. art. I, § 8.

74.     By requiring and coercing citizens and residents of the Plaintiff States to have healthcare coverage, the Act exceeds Congress's limited powers enumerated in Article I of the Constitution, and cannot be upheld under any other provision of the Constitution.

75.     By requiring and coercing citizens and residents of the Plaintiff States to have healthcare coverage, the Act deprives those citizens and residents, and NFIB members and the Individual Plaintiffs, of their rights under State law to make personal

healthcare decisions without governmental interference, and violates the rights of the States as sovereigns to confer and define such rights in their constitutions or by statute, in violation of the Ninth and Tenth Amendments to the Constitution and the constitutional principles of federalism and dual sovereignty on which this Nation was founded.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Declare the Patient Protection and Affordable Care Act, as amended, to be unconstitutional;

B.    Declare that the individual mandate exceeds Congress's authority under Article I of the Constitution and violates the Ninth and Tenth Amendments;

C.    Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against the Plaintiff States, including their agencies, officials, and employees; the citizens and residents of the Plaintiff States; NFIB members and small business owners; and the Individual Plaintiffs, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.    Award Plaintiffs their costs and grant such other relief as the Court may deem just and proper.

## COUNT TWO

## UNCONSTITUTIONAL MANDATE THAT ALL INDIVIDUALS HAVE HEALTHCARE INSURANCE COVERAGE OR PAY A PENALTY
### (Const. amend. V)

76.     Plaintiffs reallege, adopt, and incorporate by reference paragraphs 1 through 68 above as though fully set forth herein.

77.     The Act forces citizens and residents of the Plaintiff States, including NFIB members and the Individual Plaintiffs, to obtain and maintain a federally-approved level of health coverage for themselves and their dependents, regardless of whether they want or need that coverage, or pay a penalty.

78.     By requiring and coercing NFIB's members and the Individual Plaintiffs to obtain and maintain such healthcare coverage, the Act deprives them of their right to be free of unwarranted and unlawful federal government compulsion in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Declare the Patient Protection and Affordable Care Act, as amended, to be unconstitutional;

B.     Declare Defendants to have violated the rights of NFIB members and small business owners and the Individual Plaintiffs under the Due Process Clause of the Fifth Amendment;

C.     Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against NFIB members and small business

owners and the Individual Plaintiffs, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.    Award NFIB and the Individual Plaintiffs their costs and grant such other relief as the Court may deem just and proper.

## COUNT THREE

### VIOLATION OF CONSTITUTIONAL PROHIBITION OF UNAPPORTIONED CAPITATION OR DIRECT TAX
(Const. art. I, §§ 2, 9 & amends. IX, X)

79.    Plaintiffs reallege, adopt, and incorporate by reference paragraphs 1 through 68 above as though fully set forth herein.

80.    Alternatively, the penalty on uninsured persons under the Act constitutes a capitation and a direct tax that is not apportioned among the States according to census data, thereby injuring the sovereign interests of Plaintiff States and the interests of all citizens and residents of the Plaintiff States and of the United States.

81.    The tax applies without regard to property, profession, or any other circumstance, and is unrelated to any taxable event or activity.  It is to be levied upon persons for their failure or refusal to do anything other than to exist and reside in any of the States comprising the United States.

82.    The tax violates article I, sections 2 and 9 of, and the Ninth and Tenth Amendments to, the Constitution.  The Act's imposition of the tax, and the resulting coercion of many persons either to enroll in an expanded Medicaid program at a substantial cost to the Plaintiff States or to get coverage from intrastate exchanges that States must establish to avoid loss of substantial regulatory authority, injures Plaintiff

States' sovereign interests and violates the States' constitutional protection against unapportioned capitation taxes or direct taxation. The tax also infringes on the right of NFIB members and the Individual Plaintiffs to be free from unconstitutional taxation. The tax is unconstitutional on its face and cannot be applied constitutionally.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.      Declare the Patient Protection and Affordable Care Act, as amended, to be unconstitutional;

B.      Declare Defendants to have violated the Plaintiff States' constitutional protection against unapportioned capitation taxes or direct taxation, and to have violated the rights of all citizens and residents of the Plaintiff States and of the United States, including NFIB members and small business owners and the Individual Plaintiffs, to be free from unconstitutional taxation;

C.      Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against the Plaintiff States, including their agencies, officials, and employees; the citizens and residents of the Plaintiff States; NFIB members and small business owners; and the Individual Plaintiffs, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.      Award Plaintiffs their costs and grant such other relief as the Court may deem just and proper.

## COUNT FOUR

**COERCION AND COMMANDEERING AS TO MEDICAID**
**(Const. art. I & amends. IX, X)**

83.     Plaintiffs reallege, adopt, and incorporate by reference paragraphs 1 through 68 above as though fully set forth herein.

84.     Plaintiff States cannot afford the unfunded costs of participating under the Act, but effectively have no choice other than to participate.

85.     The Act exceeds Congress's powers under Article I of the Constitution, and cannot be upheld under the Commerce Clause, Const. art. I, §8; the Taxing and Spending Clause, id.; or any other provision of the Constitution.

86.     By using Medicaid to reach universal healthcare coverage goals and forcing fundamental changes in the nature and scope of the Medicaid program upon the Plaintiff States, by denying Plaintiff States any choice with respect to new Medicaid requirements and denying them flexibility to limit the fiscal impact of those changes, by effectively co-opting Plaintiff States' control over their budgetary processes and legislative agendas through compelling them to assume costs they cannot afford, by forcing Plaintiff States to become responsible for providing healthcare services for all Medicaid enrollees, by requiring Plaintiff States to carry out insurance mandates and establish intrastate insurance programs and regulations for federal purposes, by interfering in the Plaintiff States' relationships with their employees with respect to healthcare coverage, by commandeering the Plaintiff States and their employees as agents of the federal government's regulatory scheme at the States' own cost, and by interfering in the Plaintiff States' sovereignty, the Act violates Article IV, section 4 of the

27

Constitution, depriving Plaintiff States of their sovereignty and their right to a republican form of government; violates the Ninth and Tenth Amendments; and violates the constitutional principles of federalism and dual sovereignty on which this Nation was founded.

WHEREFORE, Plaintiff States respectfully request that the Court:

A.     Declare the Patient Protection and Affordable Care Act, as amended, to be unconstitutional;

B.     Declare that the Act exceeds Congress' powers under Article I of the Constitution and interferes in the Plaintiff States' sovereignty in violation of the Ninth and Tenth Amendments and constitutional principles of federalism and dual sovereignty;

C.     Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against the Plaintiff States, their citizens and residents, and any of their agencies or officials or employees, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.     Award Plaintiff States their costs and grant such other relief as the Court may deem just and proper.

## COUNT FIVE

### COERCION AND COMMANDEERING AS TO HEALTHCARE INSURANCE
### (Const. art. I & amends. IX, X)

87.     Plaintiffs reallege, adopt, and incorporate by reference paragraphs 1 through 68 above as though fully set forth herein.

88.     By requiring the Plaintiff States to carry out insurance mandates and establish intrastate insurance programs for federal purposes under threat of removing or significantly curtailing their long-held regulatory authority as to intrastate insurance, and by commandeering the Plaintiff States and their employees as agents of the federal government's regulatory scheme at the States' own cost, the Act exceeds Congress's powers under Article I of the Constitution, and interferes in the Plaintiff States' sovereignty in violation of the Ninth and Tenth Amendments and the constitutional principles of federalism and dual sovereignty on which this Nation was founded.

WHEREFORE, Plaintiff States respectfully request that the Court:

A.     Declare the Patient Protection and Affordable Care Act, as amended, to be unconstitutional;

B.     Declare that the Act exceeds Congress' powers under Article I of the Constitution and interferes in the Plaintiff States' sovereignty in violation of the Ninth and Tenth Amendments and constitutional principles of federalism and dual sovereignty;

C.     Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against the Plaintiff States, their citizens and residents, and any of their agencies or officials or employees, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.     Award Plaintiff States their costs and grant such other relief as the Court may deem just and proper.

## COUNT SIX

### INTERFERENCE WITH THE STATES' SOVEREIGNTY AS EMPLOYERS AND PERFORMANCE OF GOVERNMENTAL FUNCTIONS
### (Const. art. I & amends. IX, X)

89.     Plaintiffs reallege, adopt, and incorporate by reference paragraphs 1 through 68 above as though fully set forth herein.

90.     By imposing new employer healthcare insurance mandates on the Plaintiff States, by requiring that they automatically enroll and continue enrollment of employees in healthcare plans, by subjecting States to penalties and taxes depending upon plan attributes and individual employee coverage decisions, and by burdening the States' ability to procure goods and services and to carry out governmental functions, the Act exceeds Congress's powers under Article I of the Constitution, and interferes in the Plaintiff States' sovereignty in violation of the Ninth and Tenth Amendments and the constitutional principles of federalism and dual sovereignty on which this Nation was founded.

WHEREFORE, Plaintiff States respectfully request that the Court:

A.     Declare the Patient Protection and Affordable Care Act, as amended, to be unconstitutional;

B.     Declare that the Act exceeds Congress's powers under Article I of the Constitution, and interferes in the Plaintiff States' sovereignty in violation of the Ninth and Tenth Amendments and constitutional principles of federalism and dual sovereignty;

C.     Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against the Plaintiff States, their citizens and

residents, and any of their agencies or officials or employees, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

D.      Award Plaintiff States their costs and grant such other relief as the Court may deem just and proper.

Respectfully submitted,

**BILL MCCOLLUM**
**ATTORNEY GENERAL OF FLORIDA**

**HENRY McMASTER**
**ATTORNEY GENERAL OF SOUTH CAROLINA;**

**JON BRUNING**
**ATTORNEY GENERAL OF NEBRASKA;**

**GREG ABBOTT**
**ATTORNEY GENERAL OF TEXAS;**

**MARK L. SHURTLEFF**
**ATTORNEY GENERAL OF UTAH;**

**JAMES D. "BUDDY" CALDWELL**
**ATTORNEY GENERAL OF LOUISIANA;**

**TROY KING**
**ATTORNEY GENERAL OF ALABAMA;**

**MICHAEL A. COX**
**ATTORNEY GENERAL OF MICHIGAN;**

**JOHN W. SUTHERS**
**ATTORNEY GENERAL OF COLORADO;**

THOMAS W. CORBETT, Jr.
ATTORNEY GENERAL OF
PENNSYLVANIA;

ROBERT M. McKENNA
ATTORNEY GENERAL OF
WASHINGTON;

LAWRENCE G. WASDEN
ATTORNEY GENERAL OF IDAHO

MARTY J. JACKLEY
ATTORNEY GENERAL OF SOUTH
DAKOTA

GREGORY F. ZOELLER
ATTORNEY GENERAL OF INDIANA

WAYNE STENEHJEM
ATTORNEY GENERAL OF NORTH
DAKOTA

HALEY BARBOUR
GOVERNOR OF MISSISSIPPI

JANICE K. BREWER
GOVERNOR OF ARIZONA

JIM GIBBONS
GOVERNOR OF NEVADA

SONNY PERDUE
GOVERNOR OF GEORGIA

DANIEL S. SULLIVAN
ATTORNEY GENERAL OF ALASKA

NATIONAL FEDERATION OF
INDEPENDENT BUSINESS

MARY BROWN

KAJ AHLBURG

/s/ Blaine H. Winship
Blaine H. Winship (Fla. Bar No. 0356913)
Assistant Attorney General
Joseph W. Jacquot (Fla. Bar No. 189715)
Deputy Attorney General
Scott D. Makar (Fla. Bar No. 709697)
Solicitor General
Louis F. Hubener (Fla. Bar No. 0140084)
Timothy D. Osterhaus (Fla. Bar No.
      0133728)
Charles B. Upton II (Fla. Bar No. 0037241)
Deputy Solicitors General
Office of the Attorney General of Florida
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Email: blaine.winship@myfloridalegal.com
*Attorneys for Plaintiff States*

David B. Rivkin (D.C. Bar No. 394446)
Lee A. Casey (D.C. Bar No. 447443)
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W., Ste. 1100
Washington, DC 20036
Telephone: (202) 861-1731
Facsimile: (202) 861-1783
*Attorneys for Plaintiff States, National
Federation of Independent Business, Mary
Brown, and Kaj Ahlburg*

Katherine J. Spohn
Special Counsel to the Attorney General
Office of the Attorney General of Nebraska
2115 State Capitol Building
Lincoln, Nebraska 68508
Telephone: (402) 471-2834
Facsimile: (402) 471-1929
Email: katie.spohn@nebraska.gov
*Attorneys for Plaintiff the State of Nebraska*

33

Karen R. Harned
Executive Director
National Federation of Independent
Business
Small Business Legal Center
1201 F Street, N.W., Suite 200
Washington, DC 20004
Telephone: (202) 314-2061
Facsimile: (202) 554-5572
*Of counsel for Plaintiff National
Federation of Independent Business*

William J. Cobb III
Special Assistant and Senior Counsel
    to the Attorney General
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-0131
Facsimile: (512) 936-0545
Email: bill.cobb@oag.state.tx.us
*Attorneys for Plaintiff the State of Texas*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of May, 2010, a copy of the foregoing Amended Complaint was served on counsel of record for all Defendants through the Court's Notice of Electronic Filing system.

/s/ Blaine H. Winship
Blaine H. Winship
Assistant Attorney General
Office of the Attorney General of Florida