UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Pensacola Division

| | |
|---|---|
| STATE OF FLORIDA, by and through BILL McCOLLUM, ATTORNEY GENERAL OF THE STATE OF FLORIDA, et al., <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br> Defendants. | Case No. 3:10-cv-91-RV/EMT |

**MOTION OF GOVERNORS OF
COLORADO, MICHIGAN,
PENNSYLVANIA AND WASHINGTON
FOR LEAVE TO FILE AMICUS BRIEF
AND MEMORANDUM IN SUPPORT THEREOF**

## MOTION

The Governors of Colorado, Michigan, Pennsylvania and Washington (the "Governors") move and respectfully request leave to participate as *amici curiae* in connection with Defendants' Motion to Dismiss because their important interests in this case will not be otherwise represented.

## MEMORANDUM IN SUPPORT OF MOTION

### I. INTRODUCTION

The Governors have studied and are respectful of the Court's "Order on *Amicus Curiae* Filings" (the "Order"). They believe the intent, and possibly the terms, of the Order would not apply to the chief executive officers of those four states where the plaintiff Attorneys General have filed a lawsuit that does not represent the Governors' views. State law allows each of these Governors to present a different position in court when there is disagreement with the actions of the state's Attorney General.[1] *See* section II *infra*. Such a disagreement exists here. Unlike the plaintiff Attorneys General, the Governors believe the Patient Protection and Affordable Care Act (the "Act") is constitutional. The Governors, as the chief executive officers of their states, are in a unique position to respond to the plaintiffs' erroneous allegations that the Act unconstitutionally deprives their states of their sovereignty. For example the Governors are responsible for the administration and budgeting of the numerous state health care programs and initiatives affected by the Act and can speak directly to the longstanding state-federal cooperation in the Medicaid program, a program in which the states participate as partners and not through coercion or commandeering.

---

[1] Attached to this Motion and Memorandum as Exhibit "A" is a letter from Rob McKenna, Attorney General of the State of Washington and one of the plaintiffs in this case, agreeing to this legal principle.

The Governors did not to seek to intervene in this case in order to prevent procedural complications, believing their views could be presented efficiently and effectively through amicus participation.[2]

The Governors have reviewed the Defendants' Motion to Dismiss. This motion focuses on issues of vital concern to the Governors, including the proper balance between federalism and state sovereignty in addressing health care and insurance. The Governors' proposed amicus brief would include background information, from their state perspectives, relevant to review of a law under a "rational basis" or similar judicial standard. The information presented would be appropriate for consideration in conjunction with the defendants' motion to dismiss.[3]

Judicial consideration of such background information is particularly appropriate when the question is whether Congress had an adequate basis for the exercise of a constitutional power. In assessing the scope of Congress's authority under the Commerce Clause, the Supreme Court stressed "the task before us is a modest one. We need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Gonzales v. Raich*, 545 U.S. 1, 20-23 (2005) (citations omitted). This inquiry appropriately considers publicly available information, as illustrated by the Supreme Court's reference in *Gonzales* to the submissions of *amici* and a government publication when it considered the dimensions of the marijuana market. *Id.* at 21.[4]

---

[2] The Order indicates Federal Rule of Appellate Procedure 29 and Rule 37 of the United States Supreme Court are instructive. Under these rules, leave of court is not required for a State to file an amicus brief. The Supreme Court does not require a motion for a brief filed by a state when submitted by its Attorney General. The undersigned counsel hold appointments as special assistant attorneys general for the purpose of representing the Governors of Michigan and Washington in this matter, and also have been appointed to represent the Governors of Colorado and Pennsylvania by their General Counsel pursuant to state law. *See also* attached letter from Attorney General Rob McKenna (suggesting Governor Gregoire could appear in this matter as "State of Washington, by and through Christine O. Gregoire, Governor").

[3] *See, e.g., Castle Rock v. Gonzales*, 545 U.S. 748, 762, 780-82 (2005) (affirming dismissal of constitutional claim on motion to dismiss while distinguishing studies cited by the dissent); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Wright & Graham, Federal Practice and Procedure: Evidence 2d § 5103.2.

[4] *See also Grutter v. Bollinger*, 539 U.S. 306, 330-331 (2003) (law school's claim of compelling interest in student body diversity was "bolstered by its *amici*, who point to the educational benefits that flow from student body diversity" and citing briefs of *amici curiae* when concluding "[t]hese benefits are not theoretical but real"); *Daggett*

That is precisely the type of information the Governors will present in their Amicus Brief. The Governors have real experience with the issues of health care costs and have pursued health care initiatives in their own states.

- The Governors are knowledgeable about the impacts of spiraling health care costs on commerce in their several states and the need for a national solution to the problem.
- The Governors have studied the impacts of the uninsured on state resources and the economies of their states, including the elevated costs the insured pay because of health care provided to the uninsured.
- The Governors know the impacts on interstate commerce when uninsured residents in states without specialized hospitals are transported to other states for care.
- The Governors are knowledgeable about the history of the federal-state partnership under the Medicaid program and the continued flexibility and considerable benefits afforded to the states under the Act as a whole.

Unlike the Attorneys General of their respective states who are plaintiffs in this action, the Governors believe the health care reforms found in the Act are critical to the future affordability of health care for residents and businesses, state agencies, public employees, and tribal governments[5] in their states and are constitutional. They concluded the problems of health care costs needed to be addressed by Congress and participated in the national political process to shape the federal law to meet states' needs.[6] The Governors believe their amicus curiae brief will be one that "brings to the attention of the Court relevant matter not already brought to its attention by the parties [and] may be of considerable help to the Court." Supreme Court Rule 37.

## II. IDENTITY AND STANDING OF EACH OF THE AMICI

Christine O. Gregoire is Governor of Washington. Washington Constitution Article III, § 2 provides that "[t]he supreme executive power of this state shall be vested in a governor...."

---

*v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999) (recognizing role of *amicus* in presenting "'legislative facts' which go to the justification for a statute").

[5] The Act reauthorizes the Indian Health Care Improvement Act (ICHIA), which "will modernize the Indian health care system and improve health care for 1.9 million American Indians and Alaska Natives." <http://www.whitehouse.gov/health-care-meeting/proposal/titlex>

[6] Thus, in February 2009, the bipartisan National Governors Association formed a Health Care Reform Task Force, with six Republican and six Democratic Governors, co-chaired by Governor Granholm and including Governors Rendell and Gregoire, that was designed to identify and define gubernatorial priorities and advise the work of Congress and the Administration on health care reform.

The Washington Supreme Court has held that "the Governor, under our Constitution, is the highest executive authority." *State ex rel Hartley, Governor v. Clausen*, 264 P. 403, 405 (Wash. 1928). The Court went on to hold, *id.* at 406:

> [T]he Attorney General may act in any matter such as this upon his own initiative or at the request of the Governor, but upon his failure or refusal to act, the Governor, because of the provisions of section 2, art. 3, of our Constitution, granting him the supreme executive power of the state, is entitled to maintain an action such as this.

Edward G. Rendell is the Governor of Pennsylvania. Article IV, § 2 of the Pennsylvania Constitution states, "The supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed ...." Pennsylvania law provides the General Counsel may represent the interests of the Governor in litigation, as here, where the Attorney General does not accurately reflect the position and policies of the Governor of the Commonwealth. *See* 71 Pa. Stat. Ann. §§ 732-301, 732-303.

Bill Ritter, Jr. is the Governor of Colorado. Article IV, § 2 of the Colorado Constitution provides that "[t]he supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed." Under Colorado law, the Governor may appear in a matter to take positions contrary to those argued by the Attorney General. The Attorney General does not have "the exclusive right to prosecute and defend civil actions on behalf of the state." *Colorado State Bd. of Pharmacy v. Hallett*, 296 P. 540, 542 (Colo. 1931). Rather, the Governor, in exercising his supreme executive authority under the state Constitution, is, "[f]or litigation purposes . . . the embodiment of the state." *Developmental Pathways v. Ritter*, 178 P.3d 524, 530 (Colo. 2008); *Cf. People ex rel. Salazar v. Davidson*, 79 P.3d 1221, 1229 (Colo. 2003).

Jennifer M. Granholm is the Governor of Michigan. The executive power of the State of Michigan is vested solely in the Governor, who has the primary responsibility to take care that the laws be faithfully executed. Mich. Const. 1963, art 5, §§ 1, 8. Article 5, § 8 of the Michigan

Constitution expressly authorizes the Governor to "initiate court proceedings in the name of the state ...." Where, as here, the Attorney General has chosen to assert positions adverse to other state departments and officials including the Governor, those departments and officials can properly appear through independent counsel appointed by the Attorney General. *Attorney General v. Michigan Public Serv. Comm'n*, 625 N.W.2d 16, 33 (Mich. App. 2001).

The United States Supreme Court also has recognized that two officials of the same state with differing interests may litigate in the same case, particularly when represented by separate counsel. In *Lassen v. Arizona ex rel. Arizona Highway Dept.*, 385 U.S. 458, 460, n.1 (1967), the Court held that it could "properly deal" with a dispute between two agencies of the same State which were "represented by special counsel appointed by the Attorney General to advocate the divergent positions of the parties." Thus, the Governors have the authority to request participation in this case as amici, notwithstanding the appearance as plaintiffs of the Attorneys General of their states.

### III. TOPICS WHICH THE AMICUS CURIAE BRIEF WILL ADDRESS

**A.   The Challenges Confronting The Health Care Programs Operated By The States.**

As chief executive officers, the Governors exercise supervisory authority over state programs that provide health care or health insurance to significant portions of the states' populations, and which comprise a substantial portion of their state budgets.[7] Each state administers programs that deliver health care to low-income children, families, seniors who need long term care, and others under the Medicaid program. The states procure health care for injured workers through their workers' compensation programs and prisoners in their corrections systems. Each is a major employer in its own right and purchases health care or health insurance

---

[7] In Washington, health care costs account for more than $5 billion of the state's general fund budget, or 28% of the operating budget, annually. In Michigan, 28% of the state's operating budget is spent on Medicaid alone, while in Colorado, Medicaid expenditures account for more than 20% of the operating budget, in addition to the costs of purchasing health care for state employees and the Department of Corrections. In Pennsylvania, health care costs, excluding administrative costs, account for $23 billion or 35% of the Commonwealth's operating budget.

for large numbers of public employees and retirees. Washington and Pennsylvania also provide subsidized insurance to residents of low or moderate means, above and beyond their Medicaid programs.

These are the very programs whose budgets and administration will be affected by the Act. The plaintiffs' Amended Complaint presents a simplistic view of these impacts that ignores the substantial financial and other benefits that will accrue to the states from the Act. By virtue of the scope and depth of the Governors' involvement in administering health care programs, the Governors will be able to inform the Court as to the need for and likely effects of federal reform.

**B.    The Impacts Of Shifting The Costs Of Caring For The Uninsured To All Paying Participants In The Health Care System.**

The states of the four Governors herein have approximately 3.8 million residents without medical insurance. The fact that these individuals are uninsured, however, does not mean they do not require health care services. The states must reimburse hospitals that provide uncompensated treatment to large numbers of the uninsured. Private and public purchasers of health care and insurance, including the states, pay higher bills to help cover the cost of caring for the uninsured.[8] The uninsured place increased demands on hospitals, emergency responders, public health departments, and other social service agencies funded by the states.

The Governors understand the role of universal coverage in reducing these cost shifts from the uninsured to taxpayers and those who pay for health care or insurance. They can explain how the Medicaid expansion to 133% of FPL will pick up a significant number of the uninsured, largely at federal expense and at manageable cost to the States. The Governors also

---

[8] In Michigan, each family with insurance pays an estimated $900 per year for emergency room care for the uninsured, the most expensive form of health care available. In Pennsylvania, roughly 6.5% of every health insurance premium dollar goes to cover the costs of the uninsured. In Washington, uncompensated care by hospitals and other providers adds at least $917 a year to the medical bills of insured families (including state employees whose insurance is purchased by the state). This issue has been studied by the states, for example by Washington Insurance Commissioner Mike Kreidler. *E.g.*, Washington Office of the Insurance Commissioner, *A Problem We Can't Ignore; The hidden and rapidly growing costs of the uninsured and underinsured in Washington State* 1-2, 8 (Nov. 2009).

understand the necessary coupling of universal coverage with requiring insurers to cover preexisting health conditions. For example, Washington can describe its experience with the "death spiral" that occurred in its individual health insurance market during the 1990s when insurance coverage for preexisting conditions was required under state regulations without universal coverage.[9]

### C. The Effects Of Health Care Costs On Commerce In And Among the States.

The Governors have an interest in measures that will eliminate the stifling effects of uncontrolled health care cost increases on small business growth, economic development, and industries vital to the economic well-being of the states. For example, health care costs currently contribute an estimated $1,200 to $1,600 to the price of every vehicle manufactured by the domestic automobile industry, negatively impacting its ability to compete. Stabilizing the insurance market and making health care affordable will contribute to the potential for economic growth and increased revenues for the states. Notably, thousands of small businesses will be eligible for tax credits under the Act to make insurance more affordable. In Michigan, health care reforms could lead to the creation of 8,300 to 13,300 jobs each year, while in Colorado, expanding insurance coverage could add as many as 23,000 jobs by 2019.[10]

### D. The Act's Consistency With The Existing Federal-State Partnership Under Medicaid And Continued Flexibility For Innovation By The States.

The type of federal-state partnership embodied in the Act has already served the states well, a reality acknowledged by plaintiffs. Amended Complaint at ¶ 5. The Governors will provide the Court with factual information regarding the development and expansion of the

---

[9] *See* Final Bill Report, E2SSB 6067, 2000 Wash. Laws Ch. 79, 56th Legislature (2000).

[10] Additionally, the Governors are aware of direct effects uninsured patients have on interstate commerce. For example, many uninsured residents of states neighboring Washington seek emergency treatment at the Harborview Medical Center of the University of Washington, while many residents of southwestern Pennsylvania rely on access to West Virginia University Hospital for trauma care. This results in interstate transfers of funds as state governments subsidize the cost of care for their uninsured through disproportionate share hospital payments to providers in other states. *See West Virginia University Hospitals, Inc. v. Rendell*, 2009 WL 3241849, 1 (M.D. Pa. 2009).

Medicaid program in their states, as well as the ways in which the Act's expansion of health care access and coverage will be similarly beneficial.

In response to the narrow analysis in plaintiffs' Amended Complaint, the Governors also will inform the Court regarding the financial benefit to the states from provisions in the Act that extend Medicaid coverage to all adults up to 133% of FPL. The Governors also have an interest in explaining the long term impact of delivery system reforms supported by the Act on medical costs now borne by the states. For example, the Act carries the potential for significant savings to the states through its promotion of managed and coordinated care for individuals with chronic disease, as well as community based care for many individuals now being cared for in institutional settings. These are the kinds of programs familiar to the Governors from their own state-level initiatives.[11]

### IV. THE CRITERIA FOR PARTICIPATION AS *AMICI*.

The Order at page three "expected" that defendants' "anticipated motion to dismiss" would "raise discrete legal or procedural issues for which *amici* involvement would not be helpful or beneficial." Having read the motion, the Governors respectfully suggest that it raises legal issues on which their involvement would be helpful. In *Neonatology Associates, P.A. v. Commissioner of Internal Revenue*, 293 F.3d 128 (3rd Cir. 2002), then-Judge Alito explained in detail why RAP 29 should not be given a restrictive interpretation. Rejecting the argument that an *amicus* must show that the party to be supported is inadequately represented, he wrote at 132:

> Even when a party is very well represented, an *amicus* may provide important assistance to the court. "Some *amicus* briefs collect background or factual references that merit judicial notice. Some friends of the court are entities with particular expertise not possessed by any party to the case...." Luther T. Munford, *When Does the Curiae Need An Amicus?* 1 J. App. Prac. & Process 279 (1999).

---

[11] The Governors advocated for federal action to reform the nation's health care system and worked with Congress and the Administration to craft a law that would provide the flexibility to enable these and other state initiatives and experiments to proceed. The Governors therefore have an interest in describing for the Court the flexibility and increased opportunities for reform that they helped to create under the Act, in contrast to plaintiffs' allegation that the Act "commandeers" executive department employees of the states.

The Governors are uniquely positioned to serve that role here, because they, not the Attorneys General nor the federal defendants, possess direct expertise in the administration of health care in their states.

The Governors satisfy each of the criteria listed at page four of the Order. First, as the chief executive officers of four of the plaintiff states, the Governors have an interest in the outcome of the case which is at least equal to the interests of the Attorneys General of the same four states who joined as plaintiffs in this case. Secondly, without an Amicus Brief the Court would not be aware of what Amici believe are the real interests of these four states or that those interests differ markedly from the position advanced by the plaintiff Attorneys General.[12] As such, this Amicus Brief "is desirable and relevant to the disposition of the case." Order, p. 4. Thirdly, these Amici have "unique information or perspective that can help the Court beyond the help that the lawyers for the 'already well represented' parties are able to provide." *Id.* For example, the Governors have specific information about the Act's positive impact on state Medicaid programs and provision of care for the low-income and uninsured. That information likely is not possessed by the defendants, who do not directly administer that program, nor is it likely to be conveyed to the Court by the plaintiff Attorneys General because it is inconsistent with their litigation position.

## V.  CONCLUSION

For the reasons stated, the Governors of Colorado, Michigan, Pennsylvania and Washington respectfully ask the Court for leave to participate in this case as *amici curiae.*

---

[12] For example, the Defendants often present the plaintiffs' position as being the position of their states. *E.g.*, Mot. to Dismiss at 8 ("In Count Four, the State plaintiffs allege that the ACA converts Medicaid into a 'federally imposed universal healthcare regime' in which their 'discretion is removed' and new expenses are 'forced upon them in derogation of their sovereignty.'"). Without an Amicus Brief by the Governors, this Court would not know that the Governors of at least four of the "State plaintiffs" completely disagree based on their actual administration of state and federal programs.

## CERTIFICATE OF LOCAL RULE 7.1(B) COMPLIANCE

Counsel for the Plaintiffs were consulted before this motion was filed, and they do not agree to the granting of this Motion.

DATED: June 23, 2010

_s/ Guy Burns   s/ Aleksas A. Barauskas_
GUY BURNS • FBN 0160901
ALEKSAS A. BARAUSKAS • FBN 68175
JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP
Post Office Box 1100 • Tampa, FL 33601-1100
813.225.2500 •Fax 813.223.7118•Email: guyb@jpfirm.com

REBECCA J. ROE, WSBA #7560
WILLIAM RUTZICK, WSBA #11533
KRISTIN HOUSER, WSBA #7286
ADAM J. BERGER, WSBA #20714
SCHROETER, GOLDMARK & BENDER
810 Third Avenue, Suite 500 • Seattle, WA 98104
206.622.8000•Fax 206.682.2305•Email: roe@sgb-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2010, the foregoing document was filed with the Clerk of the Court, using the CM/ECF system, causing it to be served on all counsel of record and further by serving all counsel by U.S. Mail.

_s/ Guy Burns   s/Aleksas A. Barauskas_
GUY BURNS • FBN 0160901
ALEKSAS A. BARAUSKAS • FBN 68175
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
Post Office Box 1100
Tampa, FL 33601-1100
Telephone: 813.225.2500
Fax: 813.223.7118
Email: guyb@jpfirm.com

10



Rob McKenna
# ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE • PO Box 40100 • Olympia WA 98504-0100

May 12, 2010

The Honorable Christine Gregoire
Washington State Governor
PO Box 40002
Olympia, WA 98504-0002

Dear Governor Gregoire:

I am in receipt of your letter dated May 7, 2010. You request that in the matter of *State of Florida, et. al. v. United States Department of Health and Human services, et.al.*, I list the plaintiff as "Robert M. McKenna, Attorney General of the State of Washington." As presently drafted, however, the proposed caption will list the plaintiff State of Washington as "STATE OF WASHINGTON, by and through, ROBERT M. McKENNA, ATTORNEY GENERAL OF THE STATE OF WASHINGTON."

I have reviewed the case cited in your letter, *State ex. rel. Hartley, Governor v. Clausen*, 146 Wash. 588, 264 P. 403 (1928). While I readily acknowledge the case recognizes that the office of the Governor is the chief executive office of the State of Washington, I do not read it to lend support to your proposition that the caption "State of Washington" cannot be used over the objection of the Governor. I must decline your offer for three reasons.

First, as a means of identifying the parties in interest to this suit, the proposed caption puts the court on notice that this matter is being maintained by an independently elected constitutional officer in a *representational capacity*, rather than being maintained in an *individual* capacity by a state official. This legal distinction is an important one and I believe that your proposal would have the possibility of suggesting the latter.

Second, I note that in the proposed Amended Complaint, for states where the Attorney General is not appearing on behalf of the State (e.g. Georgia, Mississippi, Arizona, and Nevada), the caption denotes the State acting through its Governor as the party in interest. For example, Georgia will be listed as "STATE OF GEORGIA, by and through SONNY PERDUE, GOVERNOR OF THE STATE OF GEORGIA." Since you have stated it is your intent to file legal pleadings adverse to the legal arguments that will be advanced in this multi-state action, I believe this simple and consistent format will better serve the judge in determining who is



ATTORNEY GENERAL OF WASHINGTON

The Honorable Christine Gregoire
May 12, 2010
Page 2

maintaining the suit and who is making what arguments, and will serve to avoid unnecessary confusion.

Third, you note that that you have examined Washington law and found nothing that would provide the Attorney General the authority to maintain an action in the name of the State of Washington over the objection of the Governor. However, my research has yielded nothing that would require the approval of the Governor before a pleading may bear the caption "STATE OF WASHINGTON". Moreover, I believe the fact that the Attorney General is a separately elected constitutional officer and statutorily may bring and maintain actions on behalf of the state confers this right, if not this obligation. *See generally,* Const. art. III, § 1, 21; RCW 43.10.030; .040.

Recognizing our differences in this matter, I committed to facilitate the appointment of a Special Assistant Attorney General to represent your interests as Governor. That has been accomplished through the appointments of SAAGs Gary Burns and Rebecca Roe. Similarly, I understand and appreciate your desire to distinguish your interests and arguments in this matter as Governor, from mine as Attorney General. In the interest of comity, I will continue to affix my signature to pleadings in this matter bearing the caption above. However, in this instance, I would also fully agree to your appearance in this matter as "STATE OF WASHINGTON, by and through CHRISTINE O. GREGOIRE, GOVERNOR OF THE STATE OF WASHINGTON." In this manner, we each should be able to accomplish our respective goals of protecting the interests of the State of Washington. Please call me with any further concerns.

Sincerely,

ROB MCKENNA
Attorney General

RMM/kw