IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Pensacola Division

| | |
|---|---|
| STATE OF FLORIDA, by and through ) <br> BILL McCOLLUM, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> HEALTH AND HUMAN SERVICES, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 3:10-cv-91-RV/EMT |

**BRIEF OF HOUSE REPUBLICAN LEADER JOHN BOEHNER AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**INTEREST OF *AMICUS*** ........................................................................................................4

**ARGUMENT**..............................................................................................................................6

    **I.**    **The Necessary and Proper Clause Does Not Support the Individual Mandate.** ........................................................................................6

        A.    The Mandate Is Not "Necessary" and It Does Not Implement a Legitimate Exercise of an Enumerated Power........................8

        B.    Adopting Defendants' Flawed Reasoning Would Have Harmful Long-Term Effects on the Legislative Process. ..........................13

**CONCLUSION** .......................................................................................................................15

**CERTIFICATE OF SERVICE** ..............................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*Gonzales v. Raich*, 545 U.S. 1 (2005) .................................................................... 7, 11, 12

*McCulloch v. Maryland*, 17 U.S. (Wheat.) 316 (1819) ...................................................... 7

*Thomas More Law Center v. Obama*, No. 10-CV-11156, Mem. Op. (E.D. Mich. Oct. 7, 2010) ............................................................................................................................ 8

*United States v. Comstock*, 130 S. Ct. 1949 (2010) .............................................. 6, 7, 8, 13

*United States v. Darby*, 321 U.S. 100 (1941) .................................................................. 11

*United States v. S.E. Underwriters Ass'n*, 322 U.S. 533 (1944) ......................................... 9

*Virginia v. Sebelius*, No. 3:10-cv-188, Mem. Op. (Aug. 2, 2010) ............................ 6, 7, 13

*Wickard v. Filburn*, 317 U.S. 111 (1942) ........................................................................ 11

**STATUTES**

Patient Protection and Affordable Care Act ("PPACA" or "Act"), Pub. L. No. 111-148 (2010)

§ 1001 ................................................................................................................................ 8

§ 10106(a) .......................................................................................................................... 4

§ 1201 ................................................................................................................................ 8

§ 1501(a)(2)(A) .................................................................................................................. 4

U.S. CONST. art. I, § 8, cl. 18. ............................................................................................. 6

**OTHER AUTHORITIES**

Cong. Budget Office, *The Budgetary Treatment of an Individual Mandate to Buy Health Insurance* (Aug. 1994) ............................................................................................. 6, 12

*Health Reform in the 21st Century: Insurance Market Reforms:* Hearing Before the H. Comm. On Ways and Means, 111th Cong. (2009) ........................................................... 4

Janet Adamy, *Health Insurers Plan Hikes*, Wall St. Journal (Sept. 7, 2010) ...................... 4

Stephen G. Breyer, *Making Our Democracy Work: A Judge's View* 83 (Knopf 2010) ... 13

THE FEDERALIST No. 10 (James Madison) .......................................................................... 13

## **INTEREST OF *AMICUS***

*Amicus* House Republican Leader John Boehner, as a member of the leadership of the United States House of Representatives, *amicus* has a keen interest in the constitutional issues at stake in this case, as well as the long-term effects that the Court's decision on summary judgment may have on the legislative process, notwithstanding any opposition *amicus* may have voiced to the Patient Protection and Affordable Care Act (hereinafter "PPACA" or "Act"), Pub. L. No. 111-148 (2010), on policy grounds.

All members of Congress, including *amicus*, have taken oaths to uphold the Constitution of the United States. While our constitutional system is built on both vertical and horizontal checks and balances, members of Congress have an independent responsibility to uphold the Constitution and to ensure that the Legislative Branch stays within the bounds of the powers afforded it by the Constitution. In particular, *amicus* believes his perspective as a member of congressional leadership will be helpful to the Court in determining whether or not the Individual Mandate falls within Congress's power under the Necessary and Proper Clause. Additionally, *amicus* is particularly well-placed to discuss the negative effects that Defendants' position would have on the legislative process.

Defendants have argued that the PPACA's reforms of the insurance market – which fall within Congress's power to regulate interstate commerce – "could not function effectively" without the Individual Mandate. *See* Defendants' Memorandum in Support of Motion for Summary Judgment, at 19 [hereinafter "Defs. MSJ"]. Indeed, Defendants state that, without the Individual Mandate, these reforms would "inexorably drive [the

health insurance] market into extinction." Defendants' Memorandum in Support of Motion to Dismiss, at 46 [hereinafter "Defs. MTD"] (quoting *Health Reform in the 21st Century: Insurance Market Reforms:* Hearing Before the H. Comm. On Ways and Means, 111th Cong. (2009), at 13 (Uwe Reinhardt, Ph.D., Princeton University)) (alteration in original). Consequently, Defendants argue that the Mandate is "essential," and that Congress may employ "any means" reasonably adapted to "achieving [the] key reforms" found elsewhere in the Act. Defs. MSJ at 23-24.

Defendants' position is quite remarkable. She largely admits that, without the Individual Mandate, the Act is dysfunctional and will have serious negative consequences. These include, *inter alia*, (1) creating disincentives for private persons to obtain insurance, Defs. MSJ at 21 ("these new insurance regulations … would increase the incentives for individuals to make an economic and financial decision to forego health insurance coverage' …") (quoting PPACA §§ 1501(a)(2)(A), 10106(a)); (2) increasing premium costs, Defs. MSJ at 21 (stating that without the Individual Mandate, the PPACA "would drive up premiums, or reduce coverage, or both, for those who remained in the insured pool.");[1] and (3) ultimately bankrupting the insurance industry, Defs. MTD at 46 (the PPACA would "inexorably drive the health insurance market into extinction") (alternations and quotations omitted).

The Individual Mandate does not implement or facilitate enforcement of the Act's insurance industry reforms. Nonetheless, Defendants argue that the Mandate is necessary

---

[1] In fact, premium costs are already significantly increasing as a result of the Act. *See, e.g.,* Janet Adamy, *Health Insurers Plan Hikes*, Wall St. Journal (Sept. 7, 2010), *available at* http://online.wsj.com/article/SB10001424052748703720004575478200948908976.html (last visited Sept. 8, 2010)

5

to avoid the Act's negative effects, including those mentioned above. In short, Defendants acknowledge that there is a gap between the goals of the statute and its real-world results, and argue that the Necessary and Proper Clause allows Congress to bridge that gap with an otherwise unconstitutional Individual Mandate.

The Necessary and Proper Clause gives Congress the means to implement one or more of its enumerated powers. *See United States v. Comstock*, 130 S. Ct. 1949, 1956 (2010) ("we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power"). It does not, however, give Congress an all-purpose power to fill the gaps left by other legislation. Indeed, a federal court has already found that the Individual Mandate extends beyond the commerce power's "current high watermark." *Virginia v. Sebelius*, No. 3:10-cv-188, Mem. Op. at 18 (Aug. 2, 2010).

If adopted by the court, this interpretation of the Necessary and Proper Clause would create incentives for Congress to pass ill-conceived or unrealistic statutes. As House Republican Leader, *amicus* is uniquely positioned to make this argument and to explain why the Court should reject Defendants' position.

### ARGUMENT

### I. The Necessary and Proper Clause Does Not Support the Individual Mandate

The Constitution gives Congress the power to "make all Laws which shall be necessary and proper for carrying into Execution" its enumerated powers. U.S. CONST.

art. I, § 8, cl. 18.  Thus, the Necessary and Proper Clause gives Congress the means to implement a proper exercise of a constitutionally enumerated power.  *Comstock*, 130 S. Ct. at 1956.  It does not, however, give Congress an untethered ability to exceed its constitutional limitations.

As Chief Justice Marshall explained in *McCulloch v. Maryland*:  "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional."  17 U.S. (Wheat.) 316, 421 (1819); *see also Comstock*, 130 S. Ct. at 1956 (quoting *McCulloch*, 17 U.S. at 421).  These limits on Congressional power "are not merely hortatory."  *Gonzales v. Raich*, 545 U.S. 1, 39 (2005) (Scalia, J. concurring).  The Necessary and Proper Clause cannot be stretched to include illegitimate ends, inappropriate means, or laws that are inconsistent with or beyond the scope of the Constitution.

The Individual Mandate itself is not a permissible exercise of an enumerated power.  Congress's power to regulate interstate commerce does not allow it to *compel* passive individuals to engage in economic activity.  Indeed, in more than 220 years since Congress first convened, it has never even attempted to claim such power until now.  *See* Cong. Budget Office, *The Budgetary Treatment of an Individual Mandate to Buy Health Insurance*, at 1 (Aug. 1994) (Congress has "never required people to buy any good or service as a condition of lawful residence in the United States"); *see also Virginia v. Sebelius*, Mem. Op. at 18 (the Individual Mandate goes "beyond" the Commerce Clause's "current high watermark"); *id.* at 31 ("No reported case from any federal

7

appellate court has extended the Commerce Clause ... to include the regulation of a person's decision *not to* purchase a product ....") (emphasis added); *Thomas More Law Center v. Obama*, No. 10-CV-11156, Mem. Op. at 15 (E.D. Mich. Oct. 7, 2010) ("The [Supreme] Court has never needed to address the activity/inactivity distinction advanced by plaintiffs because in *every* Commerce Clause case presented thus far, there has been some sort of activity").

Nor does the Mandate carry out a legitimate end in support of the other reforms found in the Act. To the contrary, Defendants' reliance on the Necessary and Proper Clause here is best seen for what it is: an attempt to circumvent the limitations imposed on Congress by the Constitution.

### A. The Mandate Is Not "Necessary" and It Does Not Implement a Legitimate Exercise of an Enumerated Power.

The Supreme Court has made clear that the Necessary and Proper Clause does not grant Congress the legislative authority to enact a statute unless "the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Comstock*, 130 S. Ct. at 1956. Congress may rely on the Necessary and Proper Clause only where the statute is "legitimately predicated on an enumerated power," the relationship between the two is not "too attenuated," and the provision is not "too sweeping in its scope." *Id.* at 1963.

The Individual Mandate is not a "means" to carry out some other provision of the PPACA – it is a means and an end unto itself. The goal is universal coverage, and the Individual Mandate seeks to achieve this goal by requiring virtually all Americans to obtain and maintain a Congressionally-approved level of health insurance. The

Necessary and Proper Clause is not, however, an independent source of authority for achieving Congress's policy goals.  It simply provides the means to implement or enforce a legitimate use of an enumerated power.

Defendants have argued that the Individual Mandate is necessary – indeed, "essential" – to the PPACA's reforms of the insurance market.  As Defendants have noted in this case, "the Act will bar insurers from refusing to cover individuals with pre-existing medical conditions, and from setting eligibility rules based on health status, medical condition, claims experience, or medical history."  Defs. MTD at 45.  The PPACA's insurance-market reforms include, among others, the elimination of lifetime benefit limits and pre-existing condition exclusions (PPACA §§ 1001, 1201); mandatory coverage of certain preventive services (PPACA § 1001); extension of parental health coverage to unmarried adult children under 26 (PPACA § 1001); and various cost control measures (PPACA § 1001).

*Those* sections of the Act do fall within Congress's power, pursuant to the Commerce Clause, to regulate the interstate health insurance market.  *See United States v. S.E. Underwriters Ass'n*, 322 U.S. 533, 553 (1944).  However, the Individual Mandate does not implement or enforce those sections.  Defendants  nowhere suggests that, without the Mandate, those sections would somehow become legally ineffective.

Instead, Defendants have made a series of stunning admissions about the PPACA's "reforms."  According to Defendants, without the Mandate the Act will have serious negative consequences – including *higher* premium costs – that will harm consumers and will ultimately drive the health insurance market "into extinction."  *See*

9

Defs. MTD at 45-46. Defendants themselves have pointed to the dysfunctional nature of the PPACA:

- "Congress found that, absent the minimum coverage provision, these new regulations would encourage more individuals to forego insurance, aggravating cost shifting and *increasing premiums*." Defs. MTD at 45 (emphasis added).
- Without the Individual Mandate, "healthy individuals would have had overwhelmingly strong incentives ... to forego insurance coverage...." Defs. MSJ at 24.
- Without the Individual Mandate, the incentives created by the PPACA "would increase the costs of uncompensated care and the premiums for the insurance pool," Defs. MTD at 45-46, and could also "decrease coverage … for those who remained in the insured pool," Defs. MSJ at 21.
- These pressures would "inexorably drive the health insurance market *into extinction*." Defs. MTD at 46 (emphasis added, internal quotations and alterations omitted).

According to Defendants, the "[PPACA's] reforms of the insurance market ... could not function" without the Individual Mandate. Defs. MTD at 44-45; *see also* Defendants' Reply in Support of Motion to Dismiss, at 14 [hereinafter "Defs. Reply Br."] ("defendants' position" is that the Individual Mandate "is essential to the *private market insurance reforms* in the [PPACA]") (emphasis in original). In short, Defendants have

10

argued that the Individual Mandate is "necessary" to avoid the negative consequences of the PPACA itself.

Defendants' argument relies on a misunderstanding of both the Necessary and Proper Clause and the limits of Congressional power.  The consequences that Defendants point to are quite serious – in fact, Defendants highlight some of the reasons why *amicus* voted against the Act.  These consequences do not, however, bring the Individual Mandate within the scope of the Necessary and Proper Clause.

As noted above, the Necessary and Proper Clause gives Congress the means to implement a proper exercise of its powers.  Thus, for example, in *United States v. Darby* the Supreme Court upheld recordkeeping requirements that facilitated enforcement of federal fair labor standards.  *See* 321 U.S. 100 (1941).  The Court reasoned that the recordkeeping requirements were "incidental to those for the prescribed wages and hours." *Id.* at 125.  "[S]ince Congress may require production for interstate Commerce to conform to those conditions, it may require the employer, as a means of enforcing the valid law, to keep a record showing whether he has in fact complied with it." *Id.*  In a similar vein, the Court has upheld federal requirements that prevent evasion or obstruction of valid federal regulations.  *See, e.g.*, *Raich*, 545 U.S. 1; *Wickard v. Filburn*, 317 U.S. 111 (1942).

The Individual Mandate is fundamentally unlike these other provisions upheld by the Supreme Court under a Necessary and Proper analysis.  The Mandate does not implement the PPACA's reforms of the health insurance industry.  Nor does it facilitate their enforcement.  Those sections of the PPACA stand on their own as an exercise of

Congress's commerce power, and they do not need the Mandate to be legally effective. In contrast to the statute in *Gonzales v. Raich*, the Mandate does not prevent the evasion or obstruction of the PPACA's other reforms. The sections regarding "eligibility rules," for example, are legally enforceable without the Individual Mandate.

In short, the Individual Mandate is not necessary for implementation or enforcement of the PPACA's insurance industry reforms. Instead, Defendants claim that the Mandate is "essential" to avoid the *consequences* of those reforms: bad incentives, higher premiums, and ultimately the "extinction" of the insurance industry. *See* Defs. MTD at 45-46. This view fundamentally misstates the purpose and scope of the Necessary and Proper Clause. The Clause does not serve as a catch-all grant of Congressional power, that can be invoked by Congress whenever its goals (however laudable) do not match up with real-world results.

Under Defendants' logic, Congress could sidestep constitutional limitations on its powers any time it passes a statute with dysfunctional results. In fact, the more dysfunctional a statute is, the more "essential" or "necessary" the statutory "fix" would be. Thus, where there is a gap between Congress' purported goal and a statute's actual consequences, it would be "necessary," and therefore constitutionally permissible, to bridge the gap with an otherwise unconstitutional provision like the Individual Mandate. The larger the "gap," the greater the need to bridge the gap, and the greater Congress's power to enact an otherwise impermissible remedy. The more harm a statute does, the more power Congress could assume for itself under the Necessary and Proper Clause.

Defendants' reasoning is neither constitutional nor logically sound. Congress cannot circumvent the limits on its power by adopting statutes that are insufficient or unrealistic, and then relying on those failures as the basis for enacting statutory gap-fillers that exceed its powers under Article I. Such action is not "legitimately predicated on an enumerated power."[2] *Comstock*, 130 S. Ct. 1963. As a federal court has already noted in similar litigation, "[n]ever before" has the "Necessary and Proper Clause been extended this far." *Virginia v. Sebelius*, Mem. Op. at 25.

### B. Adopting Defendants' Flawed Reasoning Would Have Harmful Long-Term Effects on the Legislative Process.

Defendants' interpretation of the Necessary and Proper Clause would cause significant long-term harm to the Constitution and would encourage future Congresses to pass ill-conceived or poorly-drafted laws. Under their interpretation, a law would need only to be predicated upon a Congressional finding that it is "necessary" to alleviate the supposed negative effects of other legislation, effectively do away with the requirement that Congressional action be "legitimately predicated on an enumerated power." *Comstock*, 130 S. Ct. 1963. That would be a significant departure from settled law, eliminating one of the key limits on federal power.

---

[2] Nor does the Individual Mandate survive the Supreme Court's dictate that the provision not be "too sweeping in its scope." *See Comstock*, 130 S.Ct. 1963. Indeed, it is difficult to imagine a requirement more sweeping than the Individual Mandate. A court has already found that the Mandate exceeds the commerce power's "high watermark," *Virginia v. Sebelius*, Mem. Op. at 18, and in more than 220 years Congress has "never required people to buy any good or service as a condition of lawful residence in the United States." Cong. Budget Office, *The Budgetary Treatment of an Individual Mandate to Buy Health Insurance*, at 1 (Aug. 1994). The current Congress's assertion of power is not merely "sweeping" – it is, as the Court has already found, "without prior precedent." 10/14/10 Mem. Op., at 61.

As a practical matter, Defendants' logic also invites poorly-conceived or poorly-drafted statutes. Congress could routinely enact statutes which, like the health insurance industry reforms discussed above, are defective or otherwise insufficient to actually meet Congress's goals. By doing so, Congress could render the use of extra-constitutional fixes "essential." Thus, Congress could use the Necessary and Proper Clause to circumvent the limits on its powers. The more frequently Congress passes defective or contradictory statutes, and the more harmful or insufficient those statutes are, the greater the power that Congress could assume for itself under the Necessary and Proper Clause.

This natural extension of Defendants' logic could also lead to less electoral accountability to voters. The more convoluted the legislation passed by Congress, the more likely it will be that Members of Congress will not be able to understand or articulate the full scope of the legislation that has been considered and enacted. Consequently, Members will be less able to explain the impact of the legislation to their constituents, reducing the ability of voters to hold Members accountable for voting for clearly defined policies and making not only the legislative, but also the electoral process effectively dysfunctional. Such concerns have been contemplated in our democracy for more than 230 years.[3] This Court has observed the importance of legislative transparency in the passage of new taxes in order for the public to hold its elected representatives

---

[3] *See* THE FEDERALIST No. 10 (James Madison): "It will be of little avail to the people, that the laws are made by men of their own choice, if the laws be so voluminous that they cannot be read, or so incoherent that they cannot be understood; if they be repealed or revised before they are promulgated, or undergo such incessant changes that no man, who knows what the law is today, can guess what it will be tomorrow. Law is defined to be a rule of action; but how can that be a rule, which is little known, and less fixed?" Justice Breyer makes the parallel argument that the transparency of judicial opinions fostering governmental accountability. *See* Stephen G. Breyer, *Making Our Democracy Work: A Judge's View* 83 (Knopf 2010).

accountable.  *See* 10/14/10 Mem. Op., at 26-29.  Transparency is no less important outside the tax context.

If adopted by the Court, this interpretation of the Necessary and Proper Clause would create incentives for Congress to pass ill-conceived or unrealistic statutes.  Indeed, one need look no further than Defendants' own briefs to see the negative consequences of such an approach.  The PPACA is a morass of requirements, many with unrealistic or conflicting goals.  The result is a statutory scheme which, without the Mandate, will likely *decrease* the number of persons with health insurance, will *increase costs* for those who obtain insurance, and will drive the health insurance market "into extinction."  *See* Defs. MTD at 45-46.  Defendants' reasoning is flawed and the court should reject any interpretation of the Necessary and Proper Clause that would encourage future Congresses to pass laws in such a deleterious manner.

## CONCLUSION

For all the foregoing reasons, *amicus curiae* House Republican Leader John Boehner respectfully requests that the Court grant Plaintiffs' Motion for Summary Judgment.

Dated November 16, 2010


Respectfully submitted,


        /s/ Carrie L. Severino
        CARRIE L. SEVERINO
        FLND Bar Admission Date: 11/08/2010

        District of Columbia Bar No. 982084
        Chief Counsel and Policy Director
        Judicial Crisis Network
        113 2nd Street NE
        Washington, DC  20002-7303
        Telephone (616) 915-8180
        Facsimile (703) 396-7817
        Email: carrie@judicialnetwork.com

        Counsel for *Amicus Curiae*
        House Republican Leader John Boehner

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2010, a copy of the foregoing brief was served on counsel of record for all counsel of record in this case through the Court's Notice of Electronic Filing system.

        /s/ Carrie L. Severino
        Carrie L. Severino
        Chief Counsel
        Judicial Crisis Network

        Counsel for *Amicus Curiae*