**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA**
P<small>ENSACOLA</small> D<small>IVISION</small>

|  |  |
|---|---|
| S<small>TATE OF</small> F<small>LORIDA</small>, by and through B<small>ILL</small> M<small>C</small>C<small>OLLUM</small>, *et al.*, | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) Case No. 3:10−cv−91−RV/EMT ) |
| U<small>NITED</small> S<small>TATES</small> D<small>EPARTMENT OF</small> H<small>EALTH AND</small> H<small>UMAN</small> S<small>ERVICES</small>, *et al.*, | ) ) ) |
| *Defendants*. | ) ) |

**BRIEF OF THE FAMILY RESEARCH COUNCIL AS *AMICUS CURIAE*
SUPPORTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

K<small>ENNETH</small> A. K<small>LUKOWSKI</small>
(Indiana Bar No. 28272−06)
  *Counsel of Record*
F<small>AMILY</small> R<small>ESEARCH</small> C<small>OUNCIL</small>
801 G Street N.W.
Washington, D.C. 20001-3729
Phone (202) 393-2100
Facsimile (202) 393-2134

*Attorney for Amicus Curiae Family Research Council*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…. ……………………………………………………………..ii

INTEREST OF *AMICUS CURIAE*… …………………………………………………….1

ARGUMENT………………………………………………………………………………...1

I. SEVERABILITY CONSIDERS WHETHER THE UNCONSTITUTIONALITY OF ONE STATUTORY PROVISION INVALIDATES THE ENTIRE STATUTE…………………………………………...2

II. THE TWO-PART TEST FOR DETERMINING WHETHER AN UNCONSTITUTIONAL STATUTORY PROVISION IS SEVERABLE FROM THE REMAINDER OF THE STATUTE EXAMINES BOTH FUNCTIONALITY AND CONGRESSIONAL INTENT………………………………………….. 4

    A. The functionality prong is a judicial inquiry, but also one that infers intent……...5

    B. The presumption of severability is weakened by the absence of a severability clause………………………………………………………………………………6

    C. The principles underlying severability renders a provision nonseverable if Congress would not have enacted the statute absent the challenged provision…...7

III. THE TEXT OF ACA AND DEFENDANTS' ADMISSIONS IN THIS CASE MAKE INDISPUTABLY CLEAR THAT THE INDIVIDUAL MANDATE CANNOT BE SEVERED FROM THE STATUTE…………………………………………………………………8

    A. Defendants admit the Individual Mandate is not severable from ACA…………...8

    B. The Individual Mandate is also not partially severable from ACA, as such a holding would effectively rewrite the statute…………………………………….10

IV. THIS COURT COULD HOLD THE INDIVIDUAL MANDATE NONSEVERABLE FROM THE REMAINDER OF ACA WITH ONLY LIMITED IMPLICATIONS FOR OTHER CASES…………11

CONCLUSION…………………………………………………………………………..12

# TABLE OF AUTHORITIES

CASES

*Ala. Power Co. v. United States Doe,* 307 F.3d 1300 (11th Cir. 2002)………………….. 5

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987)…………………………….. 5, 5−6, 6

*Ayotte v. Planned Parenthood*, 546 U.S. 320 (2006)………………………... 2, 7, 7−8, 11

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985)…………………………………2

*Champlin Refining Co. v. Corporation Comm'n of Okla.*, 286 U.S. 210 (1932)………... 2

*Florida v. U.S. HHS*,
    2010 U.S. Dist. LEXIS 111775 (N.D. Fla. Oct. 14, 2010)..………………. 9, 9−10, 10

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
    130 S. Ct. 3138 (2010)…………..………………………………………. 3, 4, 4−5, 5, 10, 11

*INS v. Chadha*, 462 U.S. 919 (1983)……………………………………………..… 6, 8

*New York v. United States*, 505 U.S. 144 (1992)……………………………………… 5

*United States v. Booker*, 543 U.S. 220 (2005)………………………….………..…… 10

*United States v. Romero-Fernandez*, 983 F.2d 195 (11th Cir. 1993)……………….… 2, 5

*United States v. Treasury Employees*, 513 U.S. 454 (1995)…………………………..… 7

*Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988)………………...… 7

STATUTES

Patient Protection and Affordable Care Act, Pub. L. 111−148, 124 Stat. 119 (2010)...…9

## INTEREST OF *AMICUS CURIAE*

Founded in 1983, the Family Research Council ("FRC") is a 501(c)3 nonprofit public-policy organization headquartered in Washington, D.C., that exists to develop and analyze governmental policies that affect families in the United States.[1] As described in our motion for leave to file this brief and for the reasons set forth therein, various provisions of the statute challenged in this case are detrimental to family interests and religious liberty. These provisions are nonseverable from the provisions of the Act challenged by the Plaintiffs in this litigation, and thus faith and family interests will be advanced should this Court find either of the challenged provisions both unconstitutional and nonseverable, thus invalidating this statute in its entirety.

## ARGUMENT

*Amicus Curiae* Family Research Council supports Plaintiffs' position, in that FRC believes the Individual Mandate to be unconstitutional and that the sweeping Medicaid changes represent an impermissible expansion of federal power. FRC also joins Plaintiffs' arguments that these provisions are nonseverable from the remainder of the Act. Given the complexity and underdeveloped state of severability doctrine, FRC presents the following discussion of severability doctrine to inform this Court's deliberations by supplementing the arguments made in the Plaintiffs' briefs on this issue.

This *amicus* brief argues why the minimum essential coverage provision found in § 1501 of the Patient Protection and Affordable Care Act ("ACA")—the "Individual

---

[1] *Amicus Curiae* Family Research Council has no parent company and no subsidiary. It has issued no stock and has no public debt, and no company owns 10% or more of FRC.

Mandate" or "Mandate"—cannot be severed from the remainder of the Act, such that this Court cannot invalidate the Mandate while preserving the other provisions of the statute.

## I. SEVERABILITY CONSIDERS WHETHER THE UNCONSTITUTIONALITY OF ONE STATUTORY PROVISION INVALIDATES THE ENTIRE STATUTE.

Severability doctrine is comprised of the rules by which a court can invalidate one provision of a statute while preserving the remainder intact. "The unconstitutionality of a part of an Act does not necessarily defeat or affect the validity of its remaining provisions." *Champlin Refining Co. v. Corporation Comm'n of Okla.*, 286 U.S. 210, 234 (1932). In some—but not all—circumstances, it enables a court to surgically excise an unconstitutional provision from a statute without doing violence to the remainder of the Act. "If an unconstitutional [provision] of a statutory scheme is severable . . . we will not invalidate the entire scheme." *United States v. Romero-Fernandez*, 983 F.2d 195, 196 (11th Cir. 1993).

Severability is fundamentally a doctrine of judicial restraint. "Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem." *Ayotte v. Planned Parenthood*, 546 U.S. 320, 328 (2006). Because:

> [a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people, the normal rule is that partial, rather than facial, invalidation is the required course, such that a statute may . . . be declared invalid to the extent that it reaches too far, but otherwise left intact.

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985) (internal citation omitted).

The question of severability is a judicial inquiry of two alternatives regarding the nature of a statute. One possibility is that Congress intended a given statute as a bundle of separate legislative embodiments, which for the sake of convenience, avoiding

redundancy, and contextual application, are bundled together in a single legislative enactment. This makes a statute a series of short laws, every one of which is designed to stand alone, if needs be. The second possibility is that a given statute embodies a carefully-balanced legislative deal, in which Congress weighs competing policy priorities, and through negotiations and deliberation crafts a package codifying this delicate balance. Congress is thus not voting for separate and discrete provisions. Instead, Congress is voting on a package as a whole, any modification of which could result in the bill failing to achieve passage in Congress. As both Plaintiffs' briefs and the following argument shows, the Individual Mandate falls within the latter category, not the former.

Defendants may oppose Plaintiffs' severability argument by quoting, "Because the unconstitutionality of part of an Act does not necessarily defeat or affect the validity of its remaining provisions, the normal rule is that partial, rather than facial, invalidation is the required course." *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 130 S. Ct. 3138, 3161 (2010) (internal quotation marks omitted). If made, this argument misses the point entirely. The second clause, stating that partial invalidation is often required, is premised on the first clause, that this general rule exists because for most statutes, invalidity of one provision "*does not* necessarily . . . affect the validity of its remaining provisions." But Plaintiffs' position—which FRC supports—is that striking down the Mandate would profoundly affect the validity of many of ACA's provisions.

## II. THE TWO-PART TEST FOR DETERMINING WHETHER AN UNCONSTITUTIONAL STATUTORY PROVISION IS SEVERABLE FROM THE REMAINDER OF THE STATUTE EXAMINES BOTH FUNCTIONALITY AND CONGRESSIONAL INTENT.

The Supreme Court's most recent substantive application of severability doctrine was earlier this year in a case challenging the constitutionality of Sarbanes-Oxley, a federal statute regulating the accounting industry. *See id.* at 3147. In that case the Court invalidated a scheme whereby the members of the Act's oversight board were only removable for cause by the Securities and Exchange Commission, the members of which themselves in turn can only be removed for cause by the President, creating a double layer of protection against presidential action. *Id.* at 3151. Since Sarbanes-Oxley lacked a severability clause, the Court considered the issue of severability. *Id.* at 3161−62.

*Free Enterprise Fund* employed a two-part inquiry: First, the remainder of the statute must continue to be "fully operative as a law" absent the invalid provision. *Id.* at 3161 (citations omitted). If the remainder is fully operative, the second step is to uphold the truncated statute "unless it is evident that the Legislature would not have enacted those provisions … independently of that which is invalid." *Id.* (citation omitted).

The Court's methodology in reviewing Sarbanes-Oxley confirms this two-step approach. After discussing how the functioning of the public board at issue in that case would continue unaffected by invalidating the removal mechanism of board members, the Court concluded that the "Act remains 'fully operative as a law' with these tenure restrictions excised. " *Id.* at 3161 (quotations omitted). The Court then continued, "We therefore must sustain its remaining provisions '[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of

4

that which is not.'" *Id.* (quoting *New York v. United States*, 505 U.S. 144, 186 (1992)) (brackets in the original). The Court then took each step in turn. The Court first held that the remainder of the statute was capable of functioning independently of the invalid provision, and then added that both the statutory text and historical context did not indicate Congress would have preferred the entire statute to fail. *Id.* at 3162. Thus the Court begins by inquiring whether the Act would still be fully operative. If operative, then the Court proceeds to the second step of determining legislative intent.

### A.  The functionality prong is a judicial inquiry, but also one that infers intent.

The first part of a severability inquiry requires evaluating the remaining provisions of the statute. "In determining whether to sever a constitutionally flawed provision, courts should consider whether the balance of the legislation is incapable of functioning independently." *Romero-Fernandez*, 983 F.2d at 196. This question flows into intent, since "[t]he presumption raised by a severability clause, then, is that Congress desires to save as much of the Act as possible." *Ala. Power Co. v. United States Doe*, 307 F.3d 1300, 1307 (11th Cir. 2002). This stems from the fact that "Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987).

Federal Defendants mischaracterize controlling precedent if they suggest that this Court should inquire into whether the remaining provisions of ACA would be literally unable to function without the Individual Mandate. "The more relevant inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the

intent of Congress." *Id.* at 685. Thus even the first aspect of a severability inquiry requires this Court to infer Congress' intent.

### B. The presumption of severability is weakened by the absence of a severability clause.

All statutes entail a presumption of severability, but the strength of that presumption is set by the presence of a severability clause. In *INS v. Chadha*, the Court declared that the presence of a severability clause impacted the threshold that must be met, holding that if a clause's "language is unambiguous [it] gives rise to a presumption that Congress did not intend the validity of the Act as a whole" to hang on the validity of one provision. 462 U.S. 919, 932 (1983). Thus, "Congress could not have more plainly authorized the presumption that the provision . . . is severable from the remainder of the . . . the Act" than by inserting an unambiguous severability clause. *Id.*

> The Court later made clear that this presumption weakens without such a clause:
>
> The inquiry is eased when Congress has explicitly provided for severance by including a severability clause in the statute. This Court has held that the inclusion of such a clause creates a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision. In such a case, unless there is strong evidence that Congress intended otherwise, the objectionable provision can be excised from the remainder of the statute. In the absence of a severability clause, however, Congress' silence is just that—silence—and does not raise a presumption against severability.

*Alaska Airlines*, 480 U.S. at 686 (internal citations omitted). In holding that the judicial inquiry is "eased" by the presence of a severability clause, such that only "strong" evidence of congressional intent against severability can overcome the presumption, conversely the inquiry is more demanding absent a severability clause, and the evidence of legislative intent that the challenged provision cannot be severed need not be as strong.

6

**C. The principles underlying severability renders a provision nonseverable if Congress would not have enacted the statute absent the challenged provision.**

The Supreme Court recently clarified the rationale underlying severability doctrine:

> Three interrelated principles inform our approach to remedies. First, we try not to nullify more of a legislature's work than is necessary . . . . Second, mindful that our constitutional mandate and institutional competence are limited, we restrain ourselves from rewriting [a] law to conform it to constitutional requirements even as we try to salvage it. . . . Third, the touchstone for any decision about remedy is legislative intent, for a court cannot use its remedial powers to circumvent the intent of the legislature.

*Ayotte*, 546 U.S. at 329−30 (brackets and citations omitted). While the first principle is more a statement of general judicial policy, the second two control the instant case.

The Supreme Court elaborated on the second principle in *Ayotte* thus:

> Second, mindful that our constitutional mandate and institutional competence are limited, we restrain ourselves from "rewrite[ing] [a] law to conform it to constitutional requirements" even as we try to salvage it. *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988). Our ability to devise a judicial remedy that does not entail quintessentially legislative work often depends on how clearly we have already articulated the background constitutional rules at issue . . . But making distinctions in a murky constitutional context, or where line-drawing is inherently complex, may call for a "far more serious invasion of the legislative domain" than we ought to undertake. [*United States v. Treasury Employees*, 513 U.S. 454, 479 n.26 (1995)].

*Id.* at 329−30. Thus, the Court reasoned that surgical actions to cleanly remove unconstitutional provisions are one thing, but having to rebalance a *statutory scheme* becomes a "far more serious invasion," and is impermissible.

This relates to the third principle, which the Court expounded as follows:

> Third, the touchstone for any decision about remedy is legislative intent, for a court cannot "use its remedial powers to circumvent the intent of the legislature." After finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all? All the while, we are wary of legislatures who would rely on our intervention, for "[i]t would certainly be dangerous if the legislature could set a net large

7

> enough to catch all possible offenders, and leave it to the courts to step inside" to announce to whom the statute may be applied. "This would, to some extent, substitute the judicial for the legislative department of the government."

*Id.* at 330 (internal citations omitted). This accords with *Chadha*:

> The Court has held "that the invalid portions of a statute are to be severed [unless] it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.

462 U.S. at 931−32 (internal quotations omitted) (brackets in the original).

### III. THE TEXT OF ACA AND DEFENDANTS' ADMISSIONS IN THIS CASE MAKE INDISPUTABLY CLEAR THAT THE INDIVIDUAL MANDATE CANNOT BE SEVERED FROM THE STATUTE.

Given the controlling precedents above, the question thus becomes this: Would Congress have enacted ACA with the massive financial consequences of people *not* being required to purchase health insurance to reduce the overall projected cost of ACA? As the price of the overall legislation increases dramatically by not having millions of younger, healthy individuals entering the risk pool, as well as losing the revenue from penalty fees, would the bill still have been able to pass? Given that the House vote on ACA was 219−212, along with the public statements from various Members of Congress who indicated that the bill just barely fell under their absolute limit on costs, precedent counsels that ACA could not have been enacted without the Individual Mandate.[2]

**A. Defendants admit the Individual Mandate cannot be severed from ACA.**

---

[2] Although some judges consult legislative history for congressional intent—while others reject that approach—that debate need not enter here. This Court need not go beyond the four corners of ACA's text. And to the extent this Court goes beyond the text to consult Defendants' briefs in this case, it only serves to confirm the statutory text regarding congressional intent on the issue of severability.

ACA's provisions may still be individually operative as law without the Mandate. So we turn to the second step of a severability analysis, asking whether Congress intended ACA to function without the Mandate in a manner *consistent with the overall scheme*.

In the section of ACA declaring the Individual Mandate, Congress expressly declares the necessity of the Individual Mandate to the statute, declaring:

> [I]f there were no requirement, many individuals would wait to purchase health insurance until they needed care. By significantly increasing health insurance coverage, the requirement, together with the other provisions of this Act, will minimize this adverse selection and broaden the health insurance risk pool to include healthy individuals, which will lower health insurance premiums. *The requirement is essential* to creating effective health insurance markets . . . .

Pub. L. 111−148 § 1501 (a)(2)(G), 124 Stat. 119, 243 (2010) (emphasis added).

Moreover, Federal Defendants concede that the Individual Mandate is essential to ACA as a whole, writing to this Court that "the minimum coverage provision is essential to the Act's comprehensive scheme to ensure that health insurance coverage is available and affordable. . . The provision works in tandem with these other reforms. . . ." Def. Mem. MTD at 46. They then reiterated that the Individual Mandate is necessary, admitting "Congress . . . rationally concluded that the minimum coverage provision is necessary to make the other regulations in the Act effective." *Id.* at 48.

Additionally, this Court has found that the Individual Mandate "is necessary, according to Congress and the defendants, to . . . meet 'a core objective of the Act.'" *Florida v. U.S. HHS*, 2010 U.S. Dist. LEXIS 111775, at *9 (N.D. Fla. Oct. 14, 2010) (order denying motion to dismiss in part and granting in part). This Court adds, "with respect to the individual mandate in particular, the defendants concede that it is absolutely necessary for the Act's insurance market reforms to work as intended. In fact,

they refer to it as an 'essential' part of the Act at least fourteen times in their motion to dismiss." *Id.* at *72. This Court has thus definitively found that "Congress made factual findings in the Act and concluded that the individual mandate was 'essential' to the insurance market reforms contained in the statute." *Id.* at *111.

Therefore it is undisputed that the Mandate cannot be totally severed from ACA.

**B. The Individual Mandate is also not partially severable from ACA, as such a holding would effectively rewrite the statute.**

The next question therefore becomes whether at least part of ACA is severable from the Mandate. The purpose of partial invalidation is "to allow the statute to operate in a manner consistent with congressional intent." *United States v. Booker*, 543 U.S. 220, 227 (2005). Yet the scheme embodied in ACA cannot function without the Mandate.

It is crucially instructive here to note that the Supreme Court considered another remedy for the statute in *Free Enterprise Fund*. The Court could have struck down several provisions of Sarbanes-Oxley to downgrade the power of the challenged board until the appointees would no longer be officers of the United States subject to the Appointments Clause. The Court's response is on point here, in that the Court declined to embark upon such an endeavor, holding "such editorial freedom—far more extensive than our holding today—belongs to the Legislature, not the Judiciary. Congress of course remains free to pursue any of these options going forward." 130 S. Ct. at 3162.

It is of course theoretically possible that this Court could salvage some of ACA's 450 or so sections after striking down the Individual Mandate, thus finding the Mandate partially severable from the remainder of the statute. But the unseemly image of this Court going line-by-line through a 2,700-page statute, invalidating *hundreds* of sections

but retaining dozens (or hundreds) of others, is the very picture of editorial "blue-pencil" strikethrough activity to effectively rewrite a statute that the Supreme Court declared inappropriately-invasive of Congress' domain as recently as this year. *See id.* This is rewriting a law in an attempt to salvage it, which is barred by *Ayotte*, 546 U.S. at 329−30. Such activity vests too much power in the judiciary, in that the reviewing court can weigh each provision according to the judge's personal preferences of social utility and policy balancing, invading Congress' domain and substituting the courts for Congress. *See id.*

Should this Court attempt to pursue partial severability, it is an endeavor which would doubtless consume many months. This Court would have to determine—for *each and every provision* of ACA—whether a given provision is sufficiently independent of the Individual Mandate that the provision could function in the manner Congress intended absent the Mandate. Such a determination would require extensive additional briefing, as this Court would require detailed assessments of various studies, reports, and committee hearings to have a basis upon which to determine Congress' policymaking priorities for the remaining sections. For this Court to hold the Mandate severable without such additional congressional evidence would necessarily require this Court to substitute its own policy priorities and personal predilections for those of Congress.

**IV. THIS COURT COULD HOLD THE INDIVIDUAL MANDATE NONSEVERABLE FROM THE REMAINDER OF ACA WITH ONLY LIMITED IMPLICATIONS FOR OTHER CASES.**

The unusual facts of this case present an opportunity for this Court to hold the Individual Mandate nonseverable from ACA in a manner that has extremely limited implications beyond this litigation. Beyond simply lacking a severability clause, the statute affirmatively declares that the Mandate is essential to ACA, and in the record

Defendants reaffirm the necessity of the Mandate. Case law does not readily reveal a case before this Court or higher courts in which it was so clear that the challenged provision both lacked the protection of a severability clause and also was repeatedly emphasized in the statute's text and during litigation to be indispensable to the Act's proper functioning.

When Congress includes a severability clause, it is evidence of congressional intent to sever a provision if necessary (although sometimes a provision cannot be severed even with this intent). When Congress does not include a severability clause, this silence still allows a presumption of implied severability. But in the instant case, beyond not inserting severability, in the statute Congress affirmatively declares that the challenged provision is essential to the legislative package codified by the statute. This Court can therefore invalidate ACA *in toto* without ramifications for other statutes.

## CONCLUSION

For the foregoing reasons, this Court should find the Individual Mandate nonseverable from the statute, and should invalidate the Act in its entirety.

>Respectfully submitted,
>
>s/ Kenneth A. Klukowski
>
>KENNETH A. KLUKOWSKI
>(Indiana Bar No. 28272−06)
>  *Counsel of Record*
>FAMILY RESEARCH COUNCIL
>801 G Street N.W.
>Washington, D.C. 20001-3729
>Phone (202) 393-2100
>Facsimile (202) 393-2134
>
>*Attorney for Amicus Curiae*
>*Family Research Council*

November 19, 2010

## CERTIFICATE OF SERVICE

The undersigned counsel for *Amicus Curiae* hereby certifies that on this 19th day of November, 2010, a true and accurate copy of the foregoing Brief of the Family Research Council as Amicus Curiae Supporting Plaintiffs' Motion for Summary Judgment was filed with the Clerk of the U.S. District Court for the Northern District of Florida by being submitted the brief through the CM/ECF system, and thereby serving the brief on all counsel of record requiring service through the Court's Notice of Electronic Filing system.

s/ Kenneth A. Klukowski

KENNETH A. KLUKOWSKI
(Indiana Bar No. 28272−06)
   *Counsel of Record*
FAMILY RESEARCH COUNCIL
801 G Street N.W.
Washington, D.C. 20001-3729
Phone (202) 393-2100
Facsimile (202) 393-2134

*Attorney for Amicus Curiae*
*Family Research Council*
