IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Pensacola Division

STATE OF FLORIDA, by and through
PAM BONDI, ATTORNEY GENERAL
OF THE STATE OF FLORIDA, et al.,

    Plaintiffs,

v.                                            Case No.: 3:10-cv-91-RV/EMT

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
KATHLEEN SEBELIUS, in her official
capacity as the Secretary of the United States
Department of Health and Human Services;
UNITED STATES DEPARTMENT OF
THE TREASURY; TIMOTHY F.
GEITHNER, in his official capacity as the
Secretary of the United States Department
of the Treasury; UNITED STATES
DEPARTMENT OF LABOR; and HILDA
L. SOLIS, in her official capacity as Secretary
of the United States Department of Labor,

    Defendants.
_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO CLARIFY**

The Court should deny Defendants' inexplicably delayed motion to "clarify" its judgment of January 31, 2011. A declaratory judgment has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201(a). "Clarification" is unnecessary because the Court's Order is clear and unambiguous: (1) the Patient Protection and Affordable Care Act (the "ACA" or "Act") is unconstitutional and "the entire Act must be declared void"; and (2) the Court's "declaratory judgment is the functional equivalent of an injunction" because "there is a long-standing

presumption that officials of the Executive Branch will adhere to the law as declared by the Court." Order Granting Summary Judgment at 75-76 [Doc. 150] ("Order") (citations omitted).

This Court accorded respect to a coordinate branch of government by assuming that compliance with a duly-entered declaratory judgment order would be forthcoming and thus dispensing with an injunctive order. Despite the well-established presumption that the United States will "adhere to the law," Defendants now ask the Court to "clarify" its Order so as to allow them, irrespective of the Court's entry of final judgment in Plaintiffs' favor, to continue enforcing the ACA against "the plaintiff states, National Federation of Independent Business ("NFIB") members, and individual plaintiffs pending appeal." Defendants' Motion to Clarify [Doc. 156] ("Motion") at 4. If the Government was not prepared to comply with the Court's judgment, the proper and respectful course would have been to seek an immediate stay, not an untimely and unorthodox motion to clarify. Defendants' Motion is, in fact, a transparent attempt, through the guise of seeking clarification, to obtain a stay pending appeal.

However, Defendants conspicuously have refrained from moving forthrightly for a stay because they cannot meet the requisite standards for such relief. Indeed, as shown below, they cannot satisfy any of the four factors governing stay requests. Accordingly, because "time is of the essence in this matter[] and . . . everyone in this country would obviously benefit from certainty and final resolution of the case sooner rather than later," Order of February 18, 2011, at 1 [Doc. 157] ("2/18 Order"), the Court should stand by its prior Order, deny the Motion, and deny Defendants' thinly-veiled request for a stay.[1]

---

[1] Defendants do not represent that they will persist in their non-compliance with the Court's Order after the Court "clarifies" that its Order applies pending appeal, *see* Motion at 2, 4, 15. Moreover, Plaintiffs do not seek amendment of the Court's Order and do not, therefore, renew their request for a formal injunction at this time. However, if Defendants' forthcoming reply suggests that, absent an injunction, they will not comply with this Court's Order, then the Court should specify that Defendants are enjoined from enforcing the ACA against the Plaintiff States,

Moreover, in denying this motion, the Court also should make clear that it does not mean to entertain a subsequent stay motion with the attendant further delay.  If the Government does not intend to comply with this Court's Order, it should seek a stay from the Eleventh Circuit without further delay or further unexcused noncompliance.  If the Court is inclined to stay its judgment only so long as to permit Defendants to seek a stay from the Court of Appeals, Plaintiffs respectfully request that such a stay not exceed five (5) days.

## Argument

### I. THE COURT'S JUDGMENT IS FINAL AND BINDING

Defendants' assertion that "we do not understand the Court's declaratory judgment of its own force to relieve the parties to this case of any obligation or deny them any rights under the Act while appellate review is pending," Motion at 6, is nothing more than wishful thinking.  It proceeds from the flawed assumption that the Court's declaratory judgment is different in kind from any other final judgment fixing the rights of the parties, or somehow different from an order granting the same relief in a case in which the Government did not intend to appeal.

It is black-letter law that "[a] declaratory judgment is binding on the parties before the court and is claim preclusive in subsequent proceedings as to the matters declared."  Charles A. Wright, et al., *Federal Practice and Procedure* § 2771 (2010).  A declaratory judgment declares "the rights and other legal relations" among the parties before the Court and has "the force and effect of a final judgment."  28 U.S.C. § 2201; *see also Household Bank, F.S.B. v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003); *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 828 (11th Cir. 2010).  Were the rule otherwise, a declaratory judgment would serve "no useful

---

NFIB and its members, and the Individual Plaintiffs, because the *only* reason the Court initially declined to enter an injunction was its "presumption" that Defendants would "adhere to the law."  Order at 75.

3

purpose as a final determination of rights." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 247 (1952).

Defendants' contention that the Court needs to clarify this basic legal principle "throws sand in [the Court's] eyes," *see United States v. Cinergy Corp.*, 623 F.3d 455, 459 (7th Cir. 2010), after the Court sought to accord respect to a coordinate branch by assuming injunctive relief was unnecessary.  As the Seventh Circuit aptly has remarked, "a declaratory judgment is a real judgment, not just a bit of friendly advice."  *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010).  Beyond being procedurally improper, Defendants' Motion also is rife with substantive errors and misstatements of the law.  Defendants' principal example of a declaratory judgment case where the government has been "free to continue to apply" a statute pending appellate review is *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 153-155 (1963).  *Mendoza-Martinez* is wholly inapposite, however, because the Court's decision was predicated on 28 U.S.C. § 2282, a statute that precluded single-judge district courts from barring the operation of a federal regulatory scheme on constitutional grounds, *and that statute was repealed by Congress more than a generation ago, in 1976.  See* Pub. L. No. 94-381, 90 Stat. 1119 (Aug. 12, 1976).  Under current law, single-judge district courts are presumed to have the authority to bar the operation of any act of Congress on constitutional grounds.  *See* 28 U.S.C. § 2284(a).[2]

*Carreno v. Johnson*, 899 F. Supp. 624, 628 (S.D. Fla. 1995), also relied on by Defendants, is similarly inapposite.  There, the District Court for the Southern District of Florida declined to be bound by the declaratory judgment of the District Court for the District of Columbia as to the unconstitutionality of the extradition statute, 18 U.S.C. § 3184, entered in an

---

[2] In this respect, Defendants' quotation of *Mendoza-Martinez* that "'a single federal judge' could 'paralyze totally the operation of an entire regulatory scheme, either state or federal, by issuance of a broad injunctive order' prior to appellate review," Motion at 5, is merely a statement of a policy concern underlying the discarded 28 U.S.C. § 2282.

entirely separate case.  *Carreno* stands for nothing more than the proposition that non-mutual offensive collateral estoppel is not available against the federal government.  The *Carreno* court never suggested that the declaratory nature of the D.C. District Court's judgment relieved the government from its obligation to obey the law as declared by the S.D. Florida District Court and to respect that court's judgment.  Nor does *Carreno* suggest that the declaratory nature of this Court's judgment relieves Defendants of their obligation to comply with this Court's ruling *with respect to the Parties before it* and to treat this Court's declaratory judgment as the "functional equivalent" of an injunction which must be obeyed.  *See* Order at 75.  Defendants' failure to acknowledge these critical distinguishing aspects of *Mendoza-Martinez* and *Carreno*, and their marked failure to adduce any relevant authority, bespeak the Government's desperation to avoid the consequences of the Court's decision.

Of course, the broader problem with Defendants' theory is that a decision by them to file an appeal would not change the fundamental nature of this Court's Order.  If Defendants were not going to appeal, presumably even they would concede that they would not be free to ignore this Court's Order.  A party's unilateral decision to appeal – as opposed to a stay from a court – simply does not alter that reality.  Indeed, under Defendants' view that they need not comply with declaratory judgments pending appeal, courts would *always* have to issue injunctions during the pendency of appeals notwithstanding the well-established presumption that a declaratory judgment is sufficient relief in a suit against the federal government.

Significantly, Defendants already have raised, and this Court already has rejected, the argument that they should not be bound by the Court's judgment until the appeals process has concluded.  Defendants previously argued that a declaratory judgment would not apply until "after appellate review is exhausted."  Opposition to Plaintiffs' Motion for Summary Judgment

5

at 43 [Doc. 137]. In response to this and other arguments, the Court held that "declaratory judgment is the functional equivalent of an injunction" because "there is a long-standing presumption that officials of the Executive Branch will adhere to the law as declared by the Court." Order at 75. The Court would not have made such a ruling had it agreed with Defendants' position that a declaratory judgment would not have immediate binding force and effect. Nor, presumably, would the Court have refrained from entering a formal injunction had it doubted Defendants' willingness to respect that judgment.

Likewise unavailing is Defendants' suggestion that the Court could not have intended its judgment to have immediate effect because it allegedly failed to consider certain legal and equitable issues implicated by the scope of that judgment. Motion at 11-14. The Court obviously did not think that its own judgment overlooked any necessary issues since, as even Defendants must concede, that judgment will be binding and operative once it is affirmed on appeal, without any further action by the Court. Motion at 4-5. Regardless, identification of supposed errors in the *scope* of the Court's judgment sheds no light whatsoever on the *timing* of the judgment's effectiveness. Similarly, as discussed below, those alleged errors do not warrant staying the Court's judgment.

## II.     **DEFENDANTS ARE NOT ENTITLED TO A STAY UNDER THE GUISE OF "CLARIFICATION"**

The only fair characterization of Defendants' Motion, seeking "clarification" that the Court's final and binding declaratory judgment has no effect pending appellate review, is that it is a "de facto" request that the Court stay its judgment pending appeal. This is evident from Defendants' references to the stay-related factors of the judgment's allegedly erroneous scope, Motion at 11-14, and from their references to "significant disruption[s]" and "wide-ranging and indeterminate consequences" of the judgment, Motion at 4, 7-11.

Defendants appear to be seeking two bites at the stay apple, by their delayed clarification motion and a separate stay motion to follow, *see* Motion at 15.  The entire stay issue should be resolved here and now, because "time is of the essence in this matter," 2/18 Order at 1, and because it is obvious that Defendants cannot meet their heavy burden to justify such *extraordinary* relief.

In *Nken v. Holder*, 129 S. Ct. 1749 (2009), the Supreme Court recently reiterated the standards governing a stay pending appeal.  As a threshold matter, the Court emphasized that:

> "A stay is not a matter of right, even if irreparable injury might otherwise result."  . . . It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." . . .  The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.

*Id.* at 1760-61 (2009) (citations omitted).  The Court then observed that, in determining whether the movant has met its burden, the "legal principles have been distilled into consideration of four factors":

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Id.* at 1761 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  *See also Philidor v. U. S. Att'y Gen.*, 384 Fed. Appx. 876, 878 (11th Cir. 2010).[3]

Of these four factors, the first two "are the most critical."  *Nken*, 129 S. Ct. at 1761.  Indeed, in his concurring opinion in *Nken* (joined in by Justice Scalia), Justice Kennedy stressed that both factors must be satisfied, stating:

---

[3] While *Nken* dealt with the propriety of a circuit court's stay, which is governed by Fed. R. App. P. 8(a), the same four-factor test fully applies to motions for stays directed to district courts under Fed. R. Civ. P. 62(c).  *See Hilton*, 481 U.S. 770 at 776 ("Under both rules, . . . the factors regulating the issuance of a stay are generally the same. . . . ").

> The Court has held that "[a] stay is not a matter of right, even if irreparable injury might otherwise result." . . . When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other. This is evident in the decisions of Justices of the Court applying the traditional factors. . . . As those decisions make clear, "'the applicant must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal.'"

*Id.* at 1763-64 (Kennedy, J., concurring) (citations omitted). Only if the movant has satisfied these first two factors do the additional questions of "harm to the opposing party and weighing the public interest" come into play. *Id.* at 1762.

Defendants here have failed to satisfy any of the pertinent factors for a stay, and this is particularly true with regard to likelihood of success and irreparable injury. *First*, Defendants have not made a strong showing that they are likely to prevail on appeal. The Court's decision that the ACA unconstitutionally exceeds Congress's enumerated powers is firmly grounded in the Supreme Court's established precedent:

> It would be a radical departure from existing case law to hold that Congress can regulate inactivity under the Commerce Clause. If it has the power to compel an otherwise passive individual into a commercial transaction with a third party merely by asserting – as was done in the Act – that compelling the actual transaction is itself "commercial and economic in nature, and substantially affects interstate commerce," it is not hyperbolizing to suggest that Congress could do almost anything it wanted.

Order at 42. Similarly, the Individual Mandate, as Defendants have themselves many times conceded, is the centerpiece of the ACA and Congress clearly would not have enacted the statute's other provisions without the mandate. *Id.* at 68, 74. Therefore, the Court properly held the mandate to be non-severable and struck down the entire statute. In their motion, Defendants never demonstrate any basis to support a claim that they are likely to prevail on the merits of

these issues on appeal – much less the legally required "strong showing" of likely success. This failure alone is fatal to their request for issuance of a stay.

*Second*, any claim of irreparable injury is similarly without merit. Indeed, the very fact that Defendants refrained from immediately filing an appeal and seeking a stay, and instead waited two and one-half weeks and then merely moved to clarify the final judgment, seriously undermines any claim of irreparable injury. *See Ruckelshaus v. Monsanto Co.,* 463 U.S. 1315, 1317-1318 (1983) (per Blackmun, J., in chambers) (denying stay) (EPA Administrator's failure to act with dispatch "blunt[s] his claim of urgency and counsels against the grant of a stay"); *Beame v. Friends of the Earth,* 434 U.S. 1310, 1313 (1977) (per Marshall, J., in chambers) (denying stay) ("Applicants have not met their burden of showing a balance of hardships in their favor. Were the injury to the City from implementation of the Plan as severe as applicants now claim, one would think that they would have filed their petition for certiorari with dispatch. . . . The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm."). Thus, even had Defendants expressly couched this motion as seeking a stay, their dilatoriness would militate against its entry. This is especially true in light of the discretionary and equitable nature of a stay as underscored in *Nken*.

Moreover, Defendants fail to show that they are "irreparably injured" by being prevented from continuing to roll out the hundreds of provisions that Congress intentionally bound together in the unconstitutional ACA. The preexisting status quo should be in effect – just as it will be once the appellate process is concluded and the Court's judgment striking down the ACA has been affirmed. That the federal government must act to reinstate that previous status quo, rather than impose unconstitutional requirements on the Plaintiffs that ultimately would have to be undone anyway, does not amount to irreparable injury. If anything, any problems arising from

9

the ACA's implementation – or from its cessation – must be laid at Congress's doorstep. In the interim, Congress retains the authority to act, as needed, to provide any constitutionally-proper and separately-enacted relief that Defendants, as enforcing agencies, might request. Defendants' failure to satisfy the irreparable harm requirement, like their failure to show strong likelihood of success, is fatal to their stay request.

*Third*, Defendants cannot get around the obvious costs and burdens imposed on Plaintiffs by the continuing implementation of the unconstitutional ACA's provisions. Plaintiffs have demonstrated in their summary judgment filings – by reference to federal agency publications and sworn declarations from State personnel, the NFIB, and the Individual Plaintiffs – that the ACA is causing them substantial harm now. For example, the States must hire and assign personnel and devote substantial funds and resources now to prepare for compliance with the ACA; the Act's "maintenance of efforts" requirements already are restricting States' ability to control their costs; and the ACA now coerces States to offer expensive new benefits to officers and employees who previously were not covered. *See*  ACA §§ 1001, 1201, 2001(b), 2101(b); *see also* Plaintiffs' Statement of Material Facts [Doc. 80-2], ¶¶ 9-11, 17, 24-26, and referenced attachments in Plaintiffs' Appendix.

*Fourth*, the public interest must, first and foremost, be advanced by the protection and enforcement of the Constitution of the United States. Accordingly, the public interest is best served by the prevention of acts of Congress deemed unconstitutional from imposing added burdens and costs on the States or the American people. In the absence of a showing that Defendants are strongly likely to prevail on appeal, the public interest factor must be resolved in Plaintiffs' favor, militating against issuance of a stay.

## III. DEFENDANTS CANNOT ALTER THE SCOPE OF THE COURT'S FINAL JUDGMENT THROUGH A "MOTION TO CLARIFY"

Likewise, Defendants' purported motion for "clarification" is infused with a scattershot discussion of alleged defects in the scope of the Court's judgment, suggesting their real aim is a reconsideration of the Court's ruling. Unsurprisingly, however, Defendants have not openly sought relief under Federal Rule of Civil Procedure 59(e) (Motion to Alter or Amend a Judgment) since they plainly are not entitled to any such relief.

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact. A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999), and *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)) (alterations omitted). Yet, Defendants' challenge to the scope of the Court's judgment does precisely what is forbidden under Rule 59; they attempt to relitigate numerous issues in this case, raising arguments that they never presented and thus have waived.

For example, Defendants belatedly and incorrectly suggest that "the existence of an associational plaintiff" means that the declaratory judgment is too vague. Motion at 12. On the contrary, the law is settled that where an "association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975); *see also Wein v. Am. Huts, Inc.*, 313 F.Supp.2d 1356, 1360 (S.D. Fla. 2004). This is the very reason that associational standing exists: so that an association may "redress its members' injuries." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996). And while the government may not "know who

were NFIB members at the time of the First Amended Complaint," Motion at 12, that typically is the case in associational standing actions, because those members have anonymity rights. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449 (1958). NFIB members are perfectly capable of asserting their rights under the Court's judgment, and will have the opportunity to do so if the government attempts to enforce the Act against them.[4]

Similarly, Defendants belatedly suggest that the Anti-Injunction Act and the Declaratory Judgment Act should have barred the Court's decision to find the Act unconstitutional in whole. Motion at 7 n.5. This newfound assertion is without merit and has been waived. Nor can Defendants escape their waiver by suggesting that the statutory limitations in the Anti-Injunction Act and Declaratory Judgment Act are "jurisdictional." As for the latter, it has long been established that "[t]he Declaratory Judgment Act . . . is remedial, not jurisdictional." *Wan Shih*

---

[4] Likewise, Defendants continue to dispute Plaintiff States' standing. Defendants' citation to *Allen v. Wright*, 468 U.S. 737, 752 (1984), is inapposite. As the Court correctly has ruled, it need not consider the standing of each Plaintiff so long as at least one has standing. Order at 18. Defendants' reference to standing questions is puzzling, because Defendants never have contested Plaintiff States' showing that the Individual Mandate causes them direct injury by driving millions more persons onto Medicaid rolls; as the Court has determined, the Medicaid provisions of the ACA are unseverable from the Individual Mandate. Thus, every Plaintiff State has direct standing to challenge the mandate, and has direct entitlement to protection from the ACA's provisions *pendente lite*. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 682-83 (1987) (plaintiffs' standing to challenged one provision of statute on basis of a different, unconstitutional and allegedly non-severable provision not questioned). *Cf.* 13B Charles Alan Wright et al., *Federal Practice and Procedure* § 3532.1 & n.53 (3d ed. 2008) ("inseverability can make ripe issues that otherwise would be better deferred" and "provisions that are not severable often can be attacked if a ripe claim is advanced as to any of them") (citing *Blanchette v. Ct. Gen. Ins. Corp.*, 419 U.S. 102, 137 n.20 (1974)). Moreover, Plaintiff States provided numerous other bases for their standing. In addition, the Court's ruling highlights that Congress asserted what amounts to a general police power in enacting the Individual Mandate and tying it to the remaining provisions of the Act; plainly, all States have standing to bring suit over and receive judicial protection from so blatant an intrusion on their sovereignty, for only they may constitutionally assert a general police power. *New York v. United States*, 505 U.S. 144, 181-82 (1992), establishes that one of the States' most important functions is to protect their citizens' liberty against excessive assertions of power by the federal government that would usurp the Constitution's division of authority between it and the States. To hold that injunctive relief here applies only to a few of the Plaintiff States would be inconsistent with that overarching fundamental principle.

*Hsieh v. Kiley*, 569 F.2d 1179, 1181-82 (2d Cir. 1978), *cert. denied*, 439 U.S. 828 (1978); *see also Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433 (11th Cir. 1989).  While courts in the past have described the Anti-Injunction Act's limitations as "jurisdictional" even though the statute itself does not speak in those terms (*see, e.g.*, *Hosp. Res. Pers., Inc. v. United States*, 68 F.3d 421, 424 n.3, 428 (11th Cir. 1995)), the Supreme Court recently emphasized that courts "have been less than meticulous" and that "when Congress does not rank a statutory limitation … as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511, 516 (2006).  Indeed, the Anti-Injunction Act's limitations *cannot* truly be jurisdictional in nature because the courts "ha[ve] no authority to create equitable exceptions to jurisdictional requirements," *Bowles v. Russell*, 551 U.S. 205, 214 (2007).  Consistent with the foregoing, in a parallel challenge to the ACA, the United States District Court for the District of Columbia held that the Government had "waived" its "arguments concerning the Anti-Injunction Act," which was permissible since they did not implicate "any defect in th[e] [c]ourt's jurisdiction." *Mead v. Holder*, No. 10-950, Mem. Op. at 2 n.1 (D.D.C. Feb. 22, 2011).

## Conclusion

As a matter of law, a declaratory judgment has "the force and effect of a final judgment or decree."  28 U.S.C. § 2201(a).  Given the clarity of the Court's Order and the straightforward law governing the effect of declaratory judgments, Defendants' Motion is simply an unfounded attempt to justify a stay in this Court and, later, to build an improper post-judgment "record" for their inevitable claim in the Court of Appeals that their delay in seeking appeal and a stay is excused by their purported confusion about this Court's decision.

For all of the foregoing reasons, and especially because "time is of the essence in this matter," the Court should deny Defendants' Motion for Clarification as well as their thinly-disguised request for a stay. If the Court is inclined to stay its judgment only so long as to permit Defendants to seek a stay from the Court of Appeals, Plaintiffs respectfully request that such a stay not exceed five (5) days.

Respectfully submitted,

**PAMELA JO BONDI**
**ATTORNEY GENERAL OF FLORIDA**

/s/ Blaine H. Winship
Blaine H. Winship (Fla. Bar No. 0356913)
Special Counsel
Joseph W. Jacquot (Fla. Bar No. 189715)
Special Counsel
Scott D. Makar (Fla. Bar No. 709697)
Solicitor General
Louis F. Hubener (Fla. Bar No. 0140084)
Timothy D. Osterhaus (Fla. Bar No. 0133728)
Deputy Solicitors General
Office of the Attorney General of Florida
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Email: blaine.winship@myfloridalegal.com
*Attorneys for Plaintiff States*

Karen R. Harned
Executive Director
National Federation of Independent Business
Small Business Legal Center
1201 F Street, N.W., Suite 200
Washington, DC 20004
Telephone: (202) 314-2061
Facsimile: (202) 554-5572
*Of counsel for Plaintiff National Federation of Independent Business*

David B. Rivkin (D.C. Bar No. 394446)
Lee A. Casey (D.C. Bar No. 447443)
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W., Ste. 1100
Washington, DC 20036
Telephone: (202) 861-1731
Facsimile: (202) 861-1783
*Attorneys for Plaintiff States, National Federation of Independent Business, Mary Brown, and Kaj Ahlburg*

Katherine J. Spohn
Special Counsel to the Attorney General
Office of the Attorney General of Nebraska
2115 State Capitol Building
Lincoln, Nebraska 68508

Telephone: (402) 471-2834
Facsimile: (402) 471-1929
Email: katie.spohn@nebraska.gov
*Attorneys for Plaintiff the State of Nebraska*

Bill Cobb
Deputy Attorney General
for Civil Litigation
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-0131
Facsimile: (512) 936-0545
Email: bill.cobb@oag.state.tx.us
*Attorneys for Plaintiff the State of Texas*

Clayton P. Kawski
Assistant Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53707
Telephone: (608) 266-7477
Facsimile: (608) 267-2223
Email: kawskicp@doj.state.wi.us
*Attorneys for Plaintiff the State of Wisconsin*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 23rd day of February, 2011, a copy of the foregoing was served on counsel of record for all Defendants through the Court's Notice of Electronic Filing system.

/s/ Blaine H. Winship
Blaine H. Winship
Special Counsel
Office of the Attorney General of Florida